UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
UNITED STATES OF AMERICA,                       :
                                                :
                                                :
            -against-                           :        SHORT-FORM
                                                :        MEMORANDUM & ORDER
BLAISE CAROLEO,                                 :
                                                :        17-CR-177 (ENV)
                                Defendant.       :
------------------------------------------------------------- x

VITALIANO, D.J.

        Jury selection in this case is scheduled to start on November 12, 2019. Pursuant to

Federal Rules of Criminal Procedure 12 and 16, Caroleo has filed a slew of pre-trial motions.

Dkts. 50, 61, 67. Separately, the government has filed motions *in limine*. Dkt. 52. Having

considered the submissions of the parties, and having heard argument on September 6, 2019, the

motions are resolved in the manner and for the reasons as set forth below.

| Request | Ruling |
| --- | --- |
| I. Defendant's Motions to Dismiss, Strike and Suppress | |
| (A) Caroleo moves to dismiss counts 1 through 8 of the superseding indictment, on the ground that they violate the Eighth Amendment's prohibition on cruel and unusual punishment. *See* Dkt. 61 ("Mot. to Dismiss"); Dkt. 61-1 ("Seltzer Aff.") ¶¶ 1-5; Dkt. 61-10 ("Def.'s Mem.") at 12.<br><br>  In this indictment, Caroleo is charged | (A) Caroleo aims his Eighth Amendment challenge at counts 1 through 8 without differentiation, generalizing that they carry mandatory minimum sentences of 10 and 15 years upon conviction. This argument is further embellished by defendant's overall characterization of the indictment as "overcharged," pegged to the text message of |

| with distribution of child pornography (counts | pornographic images, or "sexting,"[1] by the |
|---|---|

---

[1] "Sexting" refers to the transmission of sexually explicit or pornographic material by text message or other forms of digital communication. In labeling this a "sexting" case in his motion papers, Caroleo overlooks that the "sexting" conduct alleged under several counts is a particular sub-set of that activity— specifically, the transmission of child pornography, produced by the child, to an adult—which is not synonymous with the broader phenomenon of "sexting" generally. Clarification of this issue at the outset is critical to its understanding because several of Caroleo's pre-trial arguments hinge on his contention that "sexting" presents novel issues of law. However, the novel issues he identifies relate to sexting cases in which no adult was involved. In support of his "novelty" proposition, Caroleo goes on to argue, incorrectly, that the prosecution of former Congressman Anthony Weiner is the only known federal case in which an adult has been prosecuted for "sexting" a minor without in-person physical contact. *See* Def.'s Mem. at 6-7 (noting that Weiner pleaded guilty to 18 U.S.C. § 1470, for transferring obscene material to a minor). He also claims that his counsel "has been unable to find any sexting case brought under [federal exploitation and child pornography laws] in any federal jurisdiction in this country." *Id.* at 5. A deeper dive proves otherwise. For example, YouTube personality Austin Jones pleaded guilty to one count of receipt of child pornography, under § 2252A(a)(2)(A), for having enticed minor fans to film and send him pornographic videos. *United States v. Jones*, No. 17-CR-417 (N.D. Il.). In addition, multiple courts within the Second Circuit have recently accepted guilty pleas in cases involving similar conduct charged under federal exploitation and child pornography statutes. *See, e.g.*, *United States v. Robinson*, No. 18-CR-404 (N.D.N.Y.) (accepting guilty plea to charge of sexual exploitation of a child under § 2251); *New Paltz Man Pleads Guilty to Sexually Exploiting Four Children*, DOJ Press Release (alleging Robinson "persuaded, induced, enticed, or coerced boys between the ages of 11 and 13 to masturbate and/or show him their genitalia . . . . then captured the activity in video files he saved to electronic storage devices"), https://www.justice.gov/usao-ndny/pr/new-paltz-man-pleads-guilty-sexually-exploiting-four-children; *United States v. Seegar*, No. 18-CR-250 (W.D.N.Y.) (accepting guilty plea to charge of receipt of child pornography under § 2252A); *Darien Center Man Pleads Guilty To Receiving Child [Pornography] From Young Girls*, DOJ Press Release (alleging Seegar "used [an] Instagram profile . . . to communicate with the girls and asked them for sexually explicit photos"), https://www.justice.gov/usao-wdny/pr/darien-center-man-pleads-guilty-receiving-child-ponography-young-girls. At least one other pending case has been charged under a similar theory. *See United States v. Tunison*, No. 19-MJ-5011 (W.D.N.Y.) (charging § 2251 violations); *Olean Man Arrested For Production Of Child Pornography*, DOJ Press Release (alleging Tunison "used one or more social media applications to communicate with" and send "numerous lewd images of himself to the minor, and solicited the minor to produce and send various images of herself to him"), https://www.justice.gov/usao-wdny/pr/olean-man-arrested-production-child-pornography. The Court also notes that, though substantive case law addressing an adult's solicitation of pornographic selfies from minors is limited, in one such case the Second Circuit ruled that the district court, at the sentencing phase, had "reasonably recognized that [it] could neither be dismissed as only 'sexting,' nor justified as 'just joking around.'" *United States v. Broxmeyer*, 699 F.3d 265, 270 (2d Cir. 2012) (internal citations omitted). The Circuit's additional observation as to the implications of "selfies" as the

1 and 2), receipt of child pornography (count 3), sexual exploitation and attempted sexual exploitation of a child (counts 4, 5, and 6), and possession of child pornography (counts 7 and 8). Dkt. 54 ("Superseding Indictment"). According to Caroleo, if convicted, he will be subject to mandatory minimum sentences that are disproportionate to the conduct charged. Caroleo contends that because the charges are based on his receipt victims themselves. Counts 1 through 3, 7, and 8, however, do not carry such mandatory minimum sentences. *See* Dkt. 63 ("2nd Gov't Opp'n") at 6 n.3. The Court, therefore, construes the Eighth Amendment challenge to apply only to counts 4 through 6, which charge sexual exploitation of children and, upon conviction, carry a mandatory minimum of 15 years imprisonment.[2] But, to cut to the quick, Caroleo's arguments are premature, as

---

specific format for the production of child pornography is instructive: the production of pornographic selfies by a minor victim simply means that the defendant using the minor "both as the model and the photographer in his attempt to produce child pornography." *Id.* at 281 (emphasis in original). This dual exploitation does not remove actionable conduct from the reach of the charged federal statutes, as written. In any event, Caroleo's related argument that the facts alleged here do not satisfy the elements of the offense charged is, ultimately, an issue for the jury, not a basis for pre-trial dismissal. *See* Def.'s Mem. at 17.

[2] Based on the allegations in the superseding indictment, and amplified by the parties' motion papers and representations at the September 6, 2019 hearing, counts 1 through 3 do not involve "selfies" sent to Caroleo. Those charges address alleged conduct of defendant with regard to child pornography that is not alleged to have been produced and sent to him by the depicted minor victims, but by other adults in possession of the images. *See* 2nd Gov't Opp'n at 2 (describing images of child pornography allegedly sent to Caroleo by other adults); *id.* at 3-4 (discussing alleged conduct as to Jane Does 1-3, corresponding to counts 4-6 of Superseding Indictment). As for counts 7 and 8, the prosecution represented at the hearing they result from his alleged possession of a multitude of child pornography files on two of his electronic devices. Caroleo does not argue that those images, no matter how they were produced and were received by him, do not meet the statutory definition of child pornography. (Indeed, some of the images that are the subject of counts 7 and 8 may have been "produced" by one or more of the Jane Does). Thus, his proportionality argument based on the claimed "novelty" of applying federal child pornography laws to "sexting" is factually limited to counts 4 through 6. Even if the argument was assumed to apply to the other counts, the same result would obtain on ripeness grounds.

and possession of pornographic "selfies," *i.e.*, photographs taken by the minors themselves, they present a novel factual pattern that Congress did not intend to address with the criminal provisions charged here. Def.'s Mem. at 16-17.

even his own briefing suggests. He cites no case suggesting that such an argument is ripe at pre-trial. Indeed, the cases he cites all concern the imposition of sentence *following* conviction.

Plainly, "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Infinity Outdoor, Inc. v. City of New York*, 165 F. Supp. 2d 403, 431 (E.D.N.Y. 2001) (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995)); *see also United States v. Caparotta*, 890 F. Supp. 2d 200, 211 & n.12 (E.D.N.Y. 2012) (rejecting facial challenge to mandatory minimum sentence under § 2251(b)(1) and concluding Eighth Amendment challenge not ripe since "there are no facts pertaining to defendant's sentencing before the court"); *United States v. Santana*, 761 F. Supp. 2d 131, 140 (S.D.N.Y. 2011) (finding mandatory minimum challenge not ripe as to defendants not yet convicted

| | |
|---|---|
| | and noting that "[t]o decide such a question based on uncertain facts would be to issue an advisory opinion on a *possible* sentence a Defendant could face *if* certain facts are established" (emphasis in original)). |
| | Viewed in the light of these precedents, Caroleo's argument is not ripe for adjudication, and he asserts no other challenge to the charged statutes that would be adjudicable at this juncture. Accordingly, the motion to dismiss on Eighth Amendment grounds is denied. The substance of the argument may be renewed in another forum should later circumstances warrant. |
| (B) Defendant moves to dismiss counts 4, 5, 6 and 9 for prosecutorial vindictiveness. Mot. to Dismiss at 1; Def.'s Mem. at 18-20; Seltzer Aff. ¶¶ 4-6; Dkt. 64 ("Def.'s Reply") at 21.[3] | (B) An indictment may be dismissed on grounds of prosecutorial vindictiveness "if actual vindictiveness has been demonstrated, or if, under the circumstances, 'there is a |

---

[3] The charges presented in counts 5, 6, and 9 were asserted for the first time in the superseding indictment. Count 4 in the superseding indictment modifies what was charged in count 1 in the original indictment, by moving the start date of the offense back from February 15, 2016 to January 24, 2016. *See* Dkt. 13 at 1; Superseding Indictment at 2-3. The balance of count 4 is otherwise the same as it was in count 1 of the original indictment. Although, initially, Caroleo also sought to dismiss counts 7 and 8 on the same ground, he conceded on reply that those counts were contained in the original indictment, in identical form, and narrowed his request accordingly. Def.'s Reply at 21.

His core argument is that the timing of the superseding indictment suggests the government added charges on the eve of trial in retaliation for his decision to go to trial. Def.'s Mem. at 18-19.

presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action.'" *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009) (citation omitted). However, "a prosecutor's pretrial charging decision is presumed legitimate," and the Second Circuit "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting." *Id.* (citation omitted). That principle is consistent with the Supreme Court's jurisprudence on the subject, which distinguishes between pretrial and post-trial charging decisions. *See United States v. Goodwin*, 457 U.S. 368, 382, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) (declining to apply presumption of vindictiveness before trial where defendant was indicted on felony charges after deciding to go to trial on misdemeanor charges arising out of the same incident). As the Supreme Court has observed, "[a] prosecutor should remain free before trial to exercise the broad

discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id.*

Without recourse to a presumption of vindictiveness, Caroleo must point to direct evidence of vindictiveness to prevail on this motion—which he does not do. *See United States v. Grant*, No. 93-CR-85 (PKL), 1994 WL 74853, at *5 (S.D.N.Y. Mar. 7, 1994) (denying pre-trial motion to dismiss). The timing of a superseding indictment, standing alone, does not show actual vindictiveness, which "requires a showing that a 'prosecutor's charging decision [is] a 'direct and *unjustifiable penalty*,' that resulted '*solely* from the defendant's exercise of a protected legal right.'" *Stewart*, 590 F.3d at 123 (emphasis added) (citation omitted). "Put another way, the defendant must show that '(1) the prosecutor harbored genuine animus toward the defendant, . . . and (2) [the defendant] would not have been prosecuted

| | |
|---|---|
| | except for the animus.'" *United States v. Feneziani*, No. 05-CR-290E, 2007 WL 1613630, at *6 (W.D.N.Y. June 1, 2007) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)); *see also United States v. Corbin*, No. 09-CR-00354 (SJF) (WDW), 2009 WL 4505513, at *2 (E.D.N.Y. Dec. 1, 2009) (noting that "[a]nimus may be shown by . . . 'direct' evidence, such as evidence of a statement by the prosecutor" (internal citation omitted.<br><br>    Consequently, because the presumption of vindictiveness does not apply in a pretrial setting and Caroleo has failed to show actual evidence of vindictiveness, the motion to dismiss counts 4, 5, 6 and 9 is denied.[4] |
| (C) Caroleo moves to strike the alias "Nimfeater" from the caption of the | (C) Federal Rule of Criminal Procedure 7(d) permits a court to "strike surplusage from the |

---

[4] To the extent that Caroleo bemoans his pretrial detention, *see* Def.'s Mem. at 19, the Court notes that he was initially released on home detention and only remanded to custody following his failure to comply with court-imposed conditions of release. Furthermore, while the Court is cognizant that Caroleo's trial date was adjourned by six months in light of the superseding indictment, Def.'s Reply at 19, he does not move to dismiss on speedy trial grounds.

indictment, arguing that it "serves no purpose other than to prejudice" him. Mot. to Dismiss at 2; Seltzer Aff. ¶¶ 9, 38.

indictment" upon a defendant's motion. To prevail, the defendant must show that the term at issue is irrelevant to the crime charged, inflammatory and prejudicial. *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001). Even if prejudicial, "aliases will not be stricken 'when evidence regarding those aliases . . . will be presented to the jury,' for example, as evidence of the crime or to assist the jury in identifying a defendant." *United States v. Thompson*, 141 F. Supp. 3d 188, 201 (E.D.N.Y. 2015) (denying motion to strike alias "Love Pimpin" where defendant was charged with, *inter alia*, running prostitution ring and alias was necessary to understand evidence at trial) (citations omitted), *aff'd*, 896 F.3d 155 (2d Cir. 2018).

Those are the exact purposes which the government argues the alias serves here, contending it is necessary "to connect Caroleo to the crimes charged by matching him to the username he used to entice minors to produce and send him pornography," which is of

| | particular relevance because "some victims may only . . . be able to identify the defendant as 'Nimfeater.'" 2nd Gov't Opp'n at 27. Furthermore, the government explains that the alias is probative of the conduct charged, since "'nimf' is a reference to a young female" and "eater" a reference to a sexual act. *Id.* The Court is satisfied, then, on these representations by the government that reference to defendant's alias is highly probative and that it outweighs any prejudice to him. The motion, therefore, is denied, but with leave to renew at the close of the government's case if defendant has a good-faith basis to do so. *See United States v. Persico*, 621 F. Supp. 842, 861 (S.D.N.Y. 1985) (denying motion to strike with leave to renew if government did not present evidence for which alias was integral). |
|---|---|
| (D) To remedy the claimed abridgment of rights guaranteed by the Sixth and Fourth Amendments, Caroleo moves to dismiss all counts in the indictment, claiming ineffective | (D) Off the start, Caroleo does not demonstrate that his assertion of an ineffective assistance claim, typically reserved for post-conviction relief, is a proper |

assistance of counsel during a proffer session with the Manhattan District Attorney's ("DA") office, on August 15, 2016, in relation to a separate state-court prosecution for his alleged assault of a bus driver. Def.'s Mem. at 7-11; Seltzer Aff. ¶ 7. He argues that his attorney in that action (who has never at any time represented him in the federal case) advised him to sign a consent form to search his cell phone, because the DA's office could obtain a warrant even if he did not consent and the state charge might be dismissed if he cooperated. Def.'s Mem. at 8. Relatedly, he moves to suppress evidence seized from his cell phone, on September 9, 2016, and his home, on October 11, 2016, because those searches were conducted pursuant to warrants relying on information obtained during the proffer session. Def.'s Mem. at 11, 21-22.

ground for dismissal of an indictment before trial. *See Strickland v. Washington*, 466 U.S. 668, 671, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (setting standard to set aside "conviction" or "sentence" for ineffective assistance of counsel). The mountain Caroleo must climb is made all the higher by the fact the alleged ineffectiveness came in the course of a state court criminal proceeding that is still pending. Regardless, assuming that the Court may consider the argument in the posture of a pretrial suppression motion, it fails when considered on the merits.

To prevail on an ineffective assistance claim, a claimant must show that "counsel's performance was deficient"—here, in the state case—and "that the deficient performance prejudiced the defense," meaning that "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 693-94. To do so, he "must overcome the

presumption that, under the circumstances, the challenged action might be considered sound legal strategy." *Id.* at 694.

Caroleo argues that his attorney's advice to sign the consent form was ineffective because he did not explain Caroleo's Fourth Amendment rights nor conduct "any investigation into the contents of the cell phone."[5] Def.'s Mem. at 8. However, Caroleo does not contest that the DA requested to search his cell phone because Caroleo himself had informed law enforcement that it contained a video of his scuffle with the bus driver, claiming that the video would exculpate him on the resulting assault charges. *See* 2nd Gov't Opp'n at 14 & n.6; Def.'s Reply at 15. Thus, counsel's advice, that the DA had probable cause to obtain a search warrant for the cell phone without his consent and that Caroleo might receive credit for cooperating with authorities,

---

[5] Although the government notes that Caroleo is still represented by the same attorney in the state-court case, *see* 2nd Gov't Opp'n at 13, the defense represented to the contrary at oral argument.

addressed the relevant Fourth Amendment considerations in tandem with sound legal strategy. The grounds for Caroleo's ineffective assistance argument are made shakier by his state attorney's sworn statement that, prior to Caroleo's consent to the search, he informed Caroleo of the completeness of any government search of his cell phone, and that he asked Caroleo if his cell phone contained anything he did not want the prosecution to see. Dkt. 68 ("Gallucci Aff.") ¶ 7. Caroleo responded, in sum and substance, that "there was nothing to worry about." *Id.* ¶ 8. Given the information available to counsel at that time, such advice was not objectively unreasonable.

As for the scope of the information available to counsel, Caroleo's role in affirmatively bringing the contents of his cell phone to the attention of law enforcement undermines his related argument that counsel unreasonably failed to investigate its contents before advising him to consent to the search.

At the proffer session, the DA did not seek to search his cell phone as a mere incident to his arrest, as he implies here. *See* Def.'s Reply at 14-15. Caroleo put his cell phone in issue by claiming that it contained *exculpatory* evidence; such conduct would not reasonably suggest to his attorney that there was a risk it also contained *incriminating* evidence, albeit of another crime. Caroleo, who, presumably, knew the contents of his cell phone better than any else, does not indicate that his counsel had any reason to suspect it contained incriminating evidence, nor that Caroleo was in any way prevented from informing his counsel to that effect when they spoke privately at the proffer session. In fact, despite noting the presence of his wife during that conversation, Caroleo offers no explanation for his withholding of this information from counsel given his awareness that the DA's office wanted to search the visual media on his cell phone. Since attorney advice requires the application of

legal principles to facts, Caroleo's silence regarding obviously incriminating facts (*i.e.*, his possession of child pornography), whose very existence was known only to him, precludes his shifting of blame to counsel in hindsight.[6]

In any event, having himself represented to prosecution that a critical video recording of the incident resulting in his state arrest was saved on his cellphone, had Caroleo refused the search, it is inevitable that state prosecution would have sought, and obtained, a search warrant authorizing law enforcement to keep the contents of his phone. The images would, on this record, have been discovered in plain view during the execution of the warrant. Caroleo does not contest that they were saved in the same location as the bus driver video nor offer any

---

[6] Moreover, Caroleo's after-the-fact assertion that he "never read" the consent form and "believed from [his] conversation with [his] lawyer that by signing the form it only meant that [he] was consenting for [the DA] to review the bus driver video" does not present a basis for suppression or dismissal. *See* Dkt. 61-2 (Def.'s Aff.") ¶ 13. Importantly, there is not the slightest hint in defendant's papers suggesting that Caroleo was unable to read or that he executed the consent form under duress or coercion.

evidence to refute the government's characterization that the visual media gallery on his cell phone "contained . . . plainly visible images of child pornography."[7] 2nd Gov't Opp'n at 17.

Simply put, Caroleo fails to show that his counsel's performance was constitutionally deficient. Indeed, based on what Caroleo admits he informed his counsel and the information Caroleo had himself provided to state prosecutors, counsel's advice to cooperate and permit review of the videos on his phone was not deficient. That this strategy led to the discovery of child pornography in his phone is unfortunate for

---

[7] On reply, Caroleo insists that a warrant for the bus driver video would not have led to the discovery of the child pornography, because it would have been limited to the bus driver video only, and the other content on his cell phone would not have been in plain view during retrieval of that video. Def.'s Reply at 16-17. However, his assertion that a search warrant could be executed with such precision as to retrieve that video with near-surgical isolation, precluding even a glimpse of the surrounding stored files, appears to have no factual basis. Furthermore, his analogy to an impermissible search of a closet where a warrant has only authorized a limited search of a "drawer in a particular desk" is inapposite, *see id.*; since the contraband images were stored in the same location as the bus driver video, the storage of multiple items in that location would actually resemble the storage of multiple items within the same dresser drawer; opening the drawer would put all items in it in plain view, not just the item specifically sought. And, again, in any event, the question presented here is not the scope of a hypothetical state search warrant. The pertinent issue is whether a Strickland violation in the state case invalidated the voluntariness of his consent pursuant to which the search was conducted.

| | him, but hardly the product of a constitutional violation or any other misconduct he has alleged in his motions. At the end of the day, state court counsel's advice stemmed from Caroleo's representation to authorities that vital evidence of the underlying criminal incident was depicted on his cellphone video. That representation made a lawful warranted search of the cellphone virtually inevitable, as well as, among its fruits, the lawful discovery of the child pornography video it also contained. Accordingly, the motion to dismiss, or, in the alternative, to suppress, is denied. |
|---|---|
| (E) Pursuant to Federal Rule of Criminal Procedure 41, Defendant moves to suppress evidence seized from his cell phone on September 9, 2016 and his home on October 11, 2016. Mot to Dismiss at 2; Def.'s Mem. at 22-23; Seltzer Aff. ¶ 8. He contends that the government failed to comply with Rule 41 because it did not file returns of the warrants pursuant to which those searches were | (E) Rule 41(f)(1)(D) provides that "[t]he officer executing the warrant must promptly return it—together with a copy of the inventory—to the magistrate judge designated on the warrant." Even assuming, *arguendo*, that a technical violation of the Rule had occurred in the warrant process, suppression would not be warranted, as such a violation has no constitutional implications here and |

| | |
|---|---|
| conducted.[8]  Def.'s Mem. at 22. | Caroleo has shown no harm affecting a substantial right. *See United States v. Burke*, 517 F.2d 377 (2d Cir. 1975).<br><br>        "[V]iolations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred . . . if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *Id.* at 386-87; *see* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").  In the complete absence of any such showing, consequently, the motion to suppress under Rule 41 is denied. |
| (F) Defendant moves to suppress the firearm referenced in count 9 under the Fourth Amendment and, in light of the requested | (F) The parties agree that the subject firearm was discovered in a locked safe in Caroleo's home, during a search for child pornography |

---

[8] Caroleo argues that Rule 41(c)(2) requires that the warrant be executed within 10 days.  Def.'s Mem. at 22.  However, he appears to cite a prior version of that rule.  See *United States v. Burke*, 517 F.2d 377, 381 (2d Cir. 1975).  The current version of Rule 41(c)(2) simply provides that a warrant may be issued for "contraband, fruits of crime, or other items illegally possessed," without imposing any 10-day window.  Caroleo also cites Rule 41(f)(4), which does not exist on the currently active version of the rule.

suppression, to dismiss count 9. Mot. to Dismiss at 1-2; Seltzer Aff. ¶ 6; Def.'s Mem. at 20-21. He contends that the firearm "was not in plain view, nor was it involved in the crimes being investigated" and giving rise to the warrant under which the search was conducted. Def.'s Mem. at 20. He further argues that its "incriminating character was not 'immediately apparent'" so as to permit the application of the plain view doctrine. *Id.*

under a warrant.

Caroleo does not argue that the search of the safe was impermissible, either under the specific terms of the warrant or under the Fourth Amendment more broadly, as it was within the premises covered by the warrant and there was probable cause to believe it contained the contraband sought thereunder— *i.e.*, child pornography. *See United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."). Nor does he argue that the firearm was not in plain view *within the safe itself*, which was properly subject to search.

Since law enforcement was aware of Caroleo's status as a felon, rendering any firearm possession on his part illegal, the discovery of the firearm made it immediately

| | apparent that it might be contraband. Thus, the seizure of the gun did not violate the Fourth Amendment. *See Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993) ("[I]f police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."). Accordingly, the motion to suppress the firearm and dismiss count 9 under the Fourth Amendment is denied. |
|---|---|
| (G) In the alternative, Caroleo moves to sever count 9. Dkt. 67 ("Mot. to Sever"). He argues the evidence supporting count 9, charging him as a felon in possession of a firearm, is unrelated to counts 1 through 8, which pertain exclusively to child pornography. *Id.* at 2. He notes the possibility of wishing to testify as to the ownership of the firearm, but not the child pornography, but that he could not do so | (G) The government consents to the severance of count 9, informing the Court its intended evidentiary proof as to count 9 is distinct from that of counts 1 through 8. Dkt. 71 (citing *United States v. Jones*, 16 F.3d 487, 492 (2d Cir. 1994). The motion to sever count 9 is therefore granted. |

| | |
|---|---|
| while also on trial for the child-pornography charges. *Id.* He also worries of the jury learning about his prior felony conviction, as the "aura of violence from possession of a weapon" could result in prejudice that outweighs any benefits to joinder of count 9. *Id.* | |

| II. Bill of Particulars and Outstanding Discovery | |
|---|---|
| (A) Requested in the form of a bill of particulars, Caroleo seeks the "name and/or initials" of the Jane Does and the minors depicted in the images and videos giving rise to counts 1 through 4, 7 and 8 of the superseding indictment.[9] Dkt. 50-2 ("1st BOP"). | (A) "The court may direct the government to file a bill of particulars," *see* Fed. R. Crim. P. 7(f), a decision that rests within its sound discretion, *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003). Such an order is appropriate where needed "to apprise [defendant] of the charges with sufficient precision so as to enable him to 'prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same |

---

[9] This motion was filed prior to the issuance of the superseding indictment. As noted earlier, the counts in the original indictment are renumbered in the superseding indictment: count 1 is now 4, counts 2 and 3 are now 1 and 2, count 4 is now 3, count 5 is now 7, and count 6 is now 8. Caroleo's motion referenced the original count numbers, but the Court uses the superseding indictment count numbers here for the sake of clarity.

offense.'" *Id.* (citation omitted). Thus, "[a] bill of particulars is required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (citation omitted).

By contrast, an order directing the government to file a bill of particulars is not necessary "where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *Id.* When the sufficiency of disclosure is disputed, a defendant bears the burden of showing necessity, as well as prejudice that will result from the denial of his request. *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019).

Caroleo fails to carry that burden here. The government asserts that it has made the relevant images and videos available for review at the FBI's office, as well as provided the user name of Jane Doe #1. Dkt. 53

("Gov't Opp'n") at 3. It is also providing him forensic reports for the seized devices and redacted PDFs of their content. *See* 2nd Gov't Opp'n at 24-25. The language of the superseding indictment, combined with these evidentiary disclosures, sufficiently informs Caroleo of the essential facts of the crimes charged. The additional information he seeks by way of a bill of particulars fails the necessity test as a result. No undue prejudice will attach to the denial of his request.[10] This holding is in accord with cases deciding similar motions in cases of this sort. *See United States v. White*, No. 07-CR-134S (SR), 2008 WL 5234340, at *1 (W.D.N.Y. Dec. 12, 2008) (denying request for bill of particulars disclosing "detailed information" related to contraband images where government made the images available for review at U.S. Attorney's office), *R&R adopted*, 2009 WL 393691 (W.D.N.Y. Feb. 16, 2009); *United*

---

[10] Although Caroleo has not amended his request to seek the same information as to Jane Does #2 and #3, referenced under counts 5 and 6 added in the superseding indictment, such request would be denied on the same grounds.

| | |
|---|---|
| | *States v. Diaz*, 303 F. Supp. 2d 84, 89 (D. Conn. 2004) (denying request for bill of particulars "for the exact dates and specific acts the government alleges [defendant] performed, and the precise means by which the pornographic materials were transported in interstate commerce"). |
| | In line with this host of authority, the motion is denied. |
| (B) Caroleo requests "copies of all the images that are the basis of all the charges in the indictment" and reserves the right to move *in limine* regarding any such evidence the government intends to introduce. 1st BOP ¶ 6; Seltzer Aff. ¶ 7. Caroleo then modified his request as to the contraband images, conceding that they must be viewed at the FBI office rather than turned over to the defense, but asking the Court to "order the government to prepare a file that defense counsel can view at the FBI office . . . and provide sufficient information so that each image corresponds to a particular count in the | (B)  The government affirms that the contraband images they intend to introduce as evidence will be made available to defense counsel one week before trial at the U.S. Attorney's office in Brooklyn, Gov't Opp'n at 4, and that defense counsel could now view, with the assistance of an FBI agent, all digital files supporting the possession counts, in their unredacted form, at the FBI office.  The government also represented at oral argument its intention to provide the defense with redacted copies of all digital files supporting the possession counts.  Defense counsel expressed satisfaction with her ability to |

| | |
|---|---|
| indictment." Dkt. 55 ("Def.'s Opp'n") at 18. He also seeks copies "of all text messages, videos and photos that are not contraband from [his] phone, including but not limited to, those items that may be evidence at the trial." *Id.* | access all discoverable material on Caroleo's seized devices. Accordingly, Caroleo's request is moot. |
| (C) Pursuant to Federal Rule of Criminal Procedure 16, Caroleo makes various requests for additional discovery and asks that the government be precluded from presenting evidence at trial that it fails to turn over in compliance with its discovery obligations. *See* Dkt. 61 ¶ 8, Seltzer Aff. ¶¶ 10-11; Dkt. 61-1 at 11-13 ("Disco Mot."). | (C) Rather than respond point-by-point, the government responds that it has already provided the requested discovery or made it available at the FBI office. *See* 2nd Gov't Opp'n at 24-25. Defense counsel conceded at oral argument that no discovery request remains outstanding. Accordingly, this request is denied as moot. |

### III. Government's Motions *in Limine*

| | |
|---|---|
| (A) Pursuant to 18 U.S.C. § 3509(d)(3), the government requests a protective order preventing the public disclosure of the full names and user names of the Jane Does listed under counts 4 through 6. Dkt. 52 ("Gov't Mot.") at 4-7; *id.* at 3 n.2. Specifically, the government requests that the minors be referred to as Jane Does during any motion | (A) Caroleo expands on the proposition previewed earlier offensively in support of his own pretrial motions, contending that a hearing is needed to determine whether the victims are still minors, and opposes the government's request in the event that they are not, because they would no longer be |

practice, and identified only by their first names "during trial and any ancillary proceedings." *Id.* at 7. In addition, it requests that transcripts of such proceedings be redacted to refer to the victims as Jane Does. *Id.*

"child[ren] in need of this protection."[11] Def.'s Opp'n at 10-12. He also argues that their screen names may be pertinent to issues at trial, for example, if a screen name has a sexual connotation that may refute the government's proof as to the coercion element of the exploitation counts. *Id.*

It is beyond dispute, of course, that § 3509(d)(3) authorizes a court to issue an order protecting a minor victim of sexual abuse or exploitation "from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child." In light of the obvious reasons why such disclosure would be detrimental, protective orders are routinely granted in cases involving sexual exploitation or abuse of minors—even where the victims are no longer minors at the time of

[11] Based on the facts set forth by the government, it appears that all three Jane Does will likely still be minors at the time of trial, or will have just passed the age of majority.

trial. *See United States v. Thompson*, 178 F. Supp. 3d 86, 96 (W.D.N.Y. 2016) (granting motion for protective order as to minor victims of sex crimes); *United States v. Kelly*, No. 07-CR-374 (SJ), 2008 WL 5068820, at *2 (E.D.N.Y. July 10, 2008) (same); *United States v. Paris*, No. 3:06-CR-64 (CFD), 2007 WL 1484974, at *2 & n.2 (D. Conn. May 18, 2007) (granting motion for protective order where sex crime victims were "no longer children" based on finding of "legitimate and substantial" government interest in protecting them "from the likely adverse personal, professional and psychological consequences" of public identification).

The government's proposed order—identifying victims by first name only during trial and ancillary proceedings, and referring to them as Jane Does in motion practice and transcripts of proceedings—is narrowly tailored to serve a compelling government interest, consistent with appellate case law. *See Thompson*, 178 F. Supp. 3d at 96 (citing

| | |
|---|---|
| | *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 607, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982)); *Paris*, 2007 WL 1484974, at *2. Since the government asserts that the screen name of Jane Doe #1 contains "easily identifiable portions of [her] name," those conditions should extend to her screen name, such that any identifying information beyond her first name must be redacted.[12] *See* Gov't Mot. at 5. The same restriction is imposed as to the screen names of the other Jane Does as well.<br><br>    Accordingly, the motion for protective order is granted, as set forth above.[13] |
| (B) Pursuant to Federal Rule of Evidence 412, the government seeks to preclude submission of evidence and argument regarding the Jane Does' other sexual behavior and purported | (B) Under Rule 412, in a proceeding "involving alleged sexual misconduct," evidence offered "to prove that a victim engaged in other sexual behavior" or to |

---

[12] Since the government states that it has disclosed the screen names of the minor victims to defense counsel, the issuance of the protective order will not impede Caroleo's preparation for trial. Gov't Mot. at 6 n.4.

[13] If the public identification of any adult witness should be subject to similar restrictions under the protective order—i.e., if an adult witness is related to and/or shares a last name with any minor victim, whose identity would be revealed by the public identification of the adult witness by their full name—the government may file a supplemental motion on ECF prior to trial.

| | |
|---|---|
| sexual predispositions. Gov't Mot. at 7-12. | "prove a victim's sexual predisposition" is not admissible. Fed. R. Evid. 412(a).[14]

      Caroleo seeks to invoke two exceptions to this provision, which allow "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor;" and "evidence whose exclusion would violate the defendant's constitutional rights."[15] Fed. R. Evid. 412(b)(1)(B),(C). He wants to question |

---

[14] The Court notes at the outset that, though colloquially known as a "rape shield" provision, the Rule applies in any "sexual misconduct" proceeding, by its terms. Similarly, its exclusion of evidence of "other sexual behavior" is not limited to physical sexual contact. Caroleo argues that Rule 412(a) does not apply here, because the Advisory Notes describe excludable "sexual behavior" as activities involving "actual physical conduct," whereas his proposed questioning would not address any victim's prior in-person sexual activity. Def.'s Opp'n at 14. However, the Advisory Notes also state that "behavior' should be construed to include activities of the mind, such as fantasies of dreams" and describe excludable predisposition evidence as evidence "relating to the alleged victim's mode of dress, speech, or life-style." Thus, a victim's prior engagement in sexual or pornographic photographs would qualify under this broad understanding of evidence excludable under Rule 412(a).

[15] Caroleo also alleges that, "[w]hile the government portrays [them] as . . . victim[s]," the minors are "guilty of the same criminal activity charged against [him] . . . [as] aider[s] and abetter[s] under Federal law. This cannot be said of any victim of a rape, sexual assault, forced prostitution or similar crimes." Def.'s Opp'n at 11. The statement that the minors are "guilty of the same criminal activity" misunderstands the theory of criminal liability for the exploitation offenses. A victim of a coercion offense, for example, cannot be convicted of aiding and abetting the coercive act against herself, since aiding and abetting is premised on facilitation of the offense, which would contradict proof of coercion.

the Does as to whether they "had a history of sexting, sending selfies and taking sexually explicit photos" of themselves. Def.'s Opp'n at 14.

First, Caroleo argues that he must cross-examine the minors as whether the contraband images resulted from his solicitation, or "previously existed, or whether [they] engaged in this type of activity despite any words used by [defendant]."[16] Def.'s Opp'n at 13. Questioning as to when the specific images at issue under counts 4 through 6 were taken, and under what circumstances, is permissible, because it directly concerns the offenses charged, rather than the Does' "other sexual behavior." However, questioning as to whether any of the minors had previously taken other pornographic selfies is irrelevant. Such other sexual behavior or predisposition has no

---

[16] Caroleo also asserts that "it is not [his] words that are on trial in this case. It is the photos that were taken by Jane Doe[s] . . . that are at issue." Def.'s Opp'n at 12. On the contrary, since one element of the exploitation charges is that Caroleo persuaded, enticed or coerced the minors to produce the images, his words are, quite literally, on trial.

bearing on a jury determination as to whether the government has met its burden of proof to show that Caroleo attempted to and/or did "employ, use, persuade, induce, entice and coerce a minor . . . to engage in sexually explicit conduct, for the purpose of producing one or more visual depictions of such conduct," as charged under counts 4 through 6. Since Caroleo is not constitutionally entitled to the admission of irrelevant evidence, he may not avail himself of the Rule 412(b)(1)(C) exception.[17]

Caroleo also invokes consent in relation to the coercion element, but confuses the issues by framing his argument under

---

[17] Defendant insists that, if he were permitted to pursue this line of questioning, he should be exempted from the mandatory effect of Rule 412(c), which provides that if a party intends to offer Rule 412(b) evidence, they "must file a motion that specifically describes the evidence and states the purpose for which it is to be offered . . . at least 14 days before trial unless the court, for good cause, sets a different time." Fed. R. Evid. 412(c)(1)(A), (B). The defense states that, because Caroleo's interactions with the minors was "anonymous," under screen names, neither he nor his counsel may investigate their prior sexual histories. Def.'s Opp'n at 13. However, his lack of information regarding the alleged victims' prior sexual histories does not exempt him from the mandatory effect of Rule 412(c). If anything, it only highlights that his proposed questioning would be a baseless fishing expedition into the minors' other sexual histories, which flouts the purpose of Rule 412. *See* Advisory Committee Notes (Rule 412 "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.").

|  | Rule 412(b)(1)(B), the exception for "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent." *See* Def.'s Opp'n at 13. Although Caroleo can defend against the charges by arguing the absence of proof regarding enticement or coercion, he cannot seek to admit evidence of prior purported "consensual sexting" between himself and the minors, who, as a matter of law, cannot consent to sexual conduct with adults, including involvement in child pornography.[18] *See United States v. Corley*, 679 F. App'x 1, 4 (2d Cir.), *cert. denied*, 138 S. Ct. 205, 199 L. Ed. 2d 135 (2017). Rather than present an inroad under any Rule 412(b) exception, such testimony might actually |
|---|---|

---

[18] This basic legal principle requires emphasis in light of Caroleo's repeated comparison of the charges against him with charges filed against minors for producing pornographic selfies; what Caroleo overlooks is that, in all of those cases, the photographs were sent to other minors, with no alleged adult involvement in the production or distribution of the images. *See* Def.'s Opp'n at 12 & n.5. Prosecutions of minors under child pornography laws for sending photos of themselves to other minors, with no adult involvement, may raise novel legal questions, but the prosecution of adults for soliciting pornographic images of and from minors, whether in person or online, does not. *See supra* n.1.

| | present evidence of additional uncharged crimes. |
|---|---|
| |     Caroleo has failed to show that his proposed questioning is permissible under Rule 412. The government's motion, therefore, is granted to the extent set forth above. |
| (C) Pursuant to Federal Rule of Evidence 405(a), the government moves to preclude the introduction of evidence of Caroleo's background, education, or health. Gov't Mot. at 12-13. | (C) Caroleo contends that resolution of this issue is premature, because he has not yet determined whether he will testify at trial. Def.'s Opp'n at 16. What he overlooks in his dash for the pause button is that such evidence might also be presented through the testimony of other witnesses, not just by defendant himself. In other words, it is ripe for consideration. |
| |     First, Rule 405(a) governs methods of proving character, not the admissibility of character evidence. Admissibility is determined under Rule 404, which provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in |

accordance with the character or trait." Fed. R. Evid. 404(a)(1). Thus, "[e]vidence that a defendant engaged in prior good acts, when the defendant has not been charged with 'ceaseless' criminal conduct is generally irrelevant and inadmissible [at trial]." *United States v. Rivera*, No. 13-CR-149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015).

Similarly, irrelevant testimony as to health or medical conditions is barred, as it "could well cause the jury to be influenced by sympathies having no bearing on the merits of the case." *United States v. Watts*, 934 F. Supp. 2d 451, 481 (E.D.N.Y. 2013) (citing *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991)).

Evidence regarding Caroleo's background, education or health, such as whether he "is a dedicated father," Gov't Mot. at 13, is not relevant to the conduct charged here, and poses a substantial risk of misleading the jury and confusing the issues.

| | |
|---|---|
| | *See* Fed R. Evid. 401, 403. Accordingly, other than with respect to ordinary pedigree information elicited from him should Caroleo take the stand, the motion to preclude such evidence is granted. |
| (D) Pursuant to Federal Rules of Evidence 402 and 403, the government moves to preclude evidence and argument as to possible punishment and collateral consequences of conviction. Gov't Mot. at 13-15. | (D) "It is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result." *United States v. Watts*, 934 F. Supp. 2d 451, 464 (E.D.N.Y. 2013). Indeed, jurors are routinely instructed not to consider the consequences of their verdict. *United States v. Blume*, 967 F.2d 45, 49 (2d Cir. 1992). Caroleo does not oppose this request. *See generally* Def.'s Opp'n. Accordingly, the motion, resting on these grounds, is granted. |
| (E) The government seeks to admit evidence of Caroleo's February 2016 arrest for assault of a bus driver, arguing that it is not barred under Federal Rule of Evidence 404(b) because it is inextricably intertwined with the | (E) Caroleo contends that the arrest and still-pending assault charge are unrelated to the issues in this case and would be prejudicial if admitted in evidence. Def.'s Opp'n at 16-17. He notes that "[t]he obvious purpose of the |

| | |
|---|---|
| discovery of evidence on his cell phone giving rise to the federal charges. Gov't Mot. at 16-18. | government's attempt to get evidence of the bus arrest before a jury is to show bad character or criminal propensity." *Id.* at 17. The Court agrees. Although the assault led to the later discovery of the evidence at issue in this case, it is irrelevant to the offenses charged here and has no probative value. It is not background evidence of events leading up to the crimes charged here, nor does it fall within the "series of transactions as the charged offense[s]" in this case. *See* Gov't Mot. at 17. Assuming for argument sake that the proffered evidence is relevant, under the balancing test required by Rule 403, the prejudice flowing from its admission far outweighs any probative value it might have. As a result, the motion is denied. |

So Ordered.

Dated:   Brooklyn, New York
             September 26, 2019

s/Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge