1

1               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - X
3
UNITED STATES OF AMERICA,    : 17-CR-00177(ENV)
4                        :
                        :
5                        :
      -against-          : United States Courthouse
6                        : Brooklyn, New York
                        :
7                        :
                        : Wednesday, November 13, 2019
8   BLAISE CAROLEO,          : 10:00 a.m.
                        :
9       Defendant.        :
                        :
10
   - - - - - - - - - - - - - X
11

12

        TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
13      BEFORE THE HONORABLE ERIC N. VITALIANO
        UNITED STATES SENIOR DISTRICT JUDGE
14

15              A P P E A R A N C E S :

16  For the Government:  RICHARD P. DONOGHUE, ESQ.
                   United States Attorney
17                 Eastern District of New York
                   271 Cadman Plaza East
18                Brooklyn, New York 11201
              BY:  ERIN ARGO, ESQ.
19                 ALICIA WASHINGTON, ESQ.
                 Assistant United States Attorneys
20

21
  For the Defendant:   MARION A. SELTZER
22                1725 York Avenue
                Suite 16-B
23                New York, New York 10128
              BY:MARION A. SELTZER, ESQ.
24

25

2

```
                    A P P E A R A N C E S:   (Continued)



 For the Defendant:     DURKIN & ROBERTS, ESQS.
                          2466 North Clark Street
                          Chicago, Illinois 60614
                        BY:SHELBY SULLIVAN-BENNIS, ESQ.







                              ooo0ooo






 Court Reporter:   Stacy A. Mace, RMR, CRR, RPR, CCR
                        Official Court Reporter
                     E-mail:  SMaceRPR@gmail.com
 Proceedings recorded by computerized stenography.  Transcript
 produced by Computer-aided Transcription.
```

SAM        OCR        RMR        CRR        RPR

Proceedings                                                    3

1              (In open court - jury not present.)

2              THE COURTROOM DEPUTY:  All rise.

3              (Judge ERIC N. VITALIANO entered the courtroom.)

4              THE COURTROOM DEPUTY:  Court is now open.  The

5    Honorable Eric N. Vitaliano presiding.

6              Case on the calendar is USA versus Caroleo,

7    17-CR-177 on for a jury trial.

8              Will the attorneys please note their appearances,

9    beginning with government counsel?

10             MS. ARGO:  Good morning, Your Honor.

11             Erin Argo and Alicia Washington for the United

12   States.

13             THE COURT:  Good morning.

14             MS. WASHINGTON:  Good morning.

15             (Defendant entered the courtroom.)

16             MS. SELTZER:  Marion Seltzer and Shelby

17   Sullivan-Bennis for Mr. Caroleo.

18             THE COURT:  Good morning to you, as well.

19             THE COURTROOM DEPUTY:  Counsel for both sides are

20   present, including defendant.

21             THE COURT:  All right, good morning to all.

22             Do we have any housekeeping that we need to attend

23   to before we begin?

24             MS. SELTZER:  Yes.

25             MS. ARGO:  Yes, Your Honor.

Proceedings                                    4

1           THE COURT:  Yes.

2           MS. SELTZER:  There have been some possibilities of

3    plea negotiations this morning.  The Government re-extended an

4    original offer, which my client has rejected.

5           He also expressed an interest in pleading to the

6    indictment under a nolo contendere plea.  And --

7           THE COURT:  Meaning which counts, Ms. Setlzer?

8           MS. SELTZER:  I guess the entire Indictment.

9           THE COURT:  The entire Indictment?

10          MS. SELTZER:  Well, the only offer on the table from

11   the Government is a plea to one count.  My understanding is

12   that there are no other offers on the table.

13          But my client has offered --

14          THE COURT:  To plead to everything?

15          MS. SELTZER:  -- to plead to everything under nolo

16   contendere, which I honestly have in my experience never -- I

17   reread Rule 11 several times.  That's the offer.  That's what

18   he's offering.

19          THE COURT:  He understands that, assuming we went

20   down that path, that it would be the same as pleading guilty

21   to all counts?

22          MS. SELTZER:  Your Honor, I have tried to explain

23   all that to him.

24          THE COURT:  Including, I don't remember them all,

25   but I know there are some with mandatory minimums and

Proceedings                                                5

1  consecutives that would be the result of either a plea of

2  guilty or of nolo contendere to that count, as opposed to one.

3          MS. SELTZER:  I am not absolutely certain that he

4  understands that, Your Honor.

5          THE COURT:  Mr. Caroleo, do you understand that now?

6          THE DEFENDANT:  I wasn't aware of the consecutives.

7          THE COURT:  It does not change, the fact that the

8  plea is nolo contendere does not change --

9          THE DEFENDANT:  No, I understand that.  I just

10 wasn't aware of the sentencing setup.  That might be a little

11 bit different.

12         THE COURT:  So there is a vast difference from

13 pleading guilty to one count that the Government has offered

14 and then pleading guilty to that same count and all the rest

15 of them, which is apparently my understanding of what you are

16 requesting, other than changing the word from guilty to nolo

17 contendere.

18         THE DEFENDANT:  Right, right.

19         THE COURT:  If you need additional time to sort that

20 out, I will be more than happy to give you additional time,

21 but that makes the Government's offer more attractive to you.

22 You might want to discuss that with Ms. Setlzer if you were

23 prepared to do what you proposed to do.

24         THE DEFENDANT:  Can I just have a second to speak

25 with them?

```
                        Proceedings                        6
```

1          MS. SULLIVAN-BENNIS:  Yes.

2          THE COURT:  Do you need some time?

3          MS. SULLIVAN-BENNIS:  We would, Your Honor.  Thank

4     you, Your Honor.

5          THE COURT:  All right, then we will take a brief

6     recess.  I am not going to go too far, and you let William

7     know when everybody is ready.  We had some technical

8     difficulties which delayed us in any event, but we believe

9     those are resolved.

10          But take the time and, Ms. Setlzer, you can try to

11     explain that a little more, if Mr. Caroleo needs that.

12          MS. ARGO:  Your Honor, might we just before we go on

13     a break, may the Government be heard briefly on this issue of

14     both the extended offer, as well as the nolo contendere?

15          THE COURT:  Absolutely.

16          MS. ARGO:  Thank you, Your Honor.

17          The defendant made statements on the record

18     yesterday with respect to wanting to spare the victims in this

19     case from having to testify.  The Government, too, does not

20     want to put these girls through a trial and decided it was in

21     the victims' best interests to offer another Plea Agreement in

22     this case.

23          Just to be clear, this is not --

24          THE COURT:  You know what, not having heard what

25     your plan was, when I heard about it, that is what I assumed

Proceedings                                                    7

1   was motivating the Government.

2          MS. ARGO:  Yes, Your Honor, that's correct.  And

3   just to be clear, this is a new offer.  It was not the

4   original offer extended to the defendant.

5          We conveyed that offer to defense counsel last

6   night.  This is actually in this case the third official plea

7   offer that the Government has extended to the defendant.  And

8   he has now advised the Government, through counsel, he has

9   rejected that plea offer.

10         The Government has done all it can to spare the

11  victims and the Court from an unnecessary trial.  At this time

12  it's clear that other than the defendant pleading to the

13  Indictment, the parties must go forward with trial.

14         Now, with respect to nolo contendere, the Government

15  has done some extensive research on this subject and I am

16  going to let my colleague Alicia Washington address that, if

17  it's all right with Your Honor.

18         THE COURT:  To correct you, as I understand it from

19  Mr. Caroleo, his consultation with Ms. Setlzer is about the

20  offer that the Government made this morning.  So that I don't

21  recognize him as having, now having heard him, finally

22  rejected the Government's offer of this morning.

23         MS. ARGO:  All right, Your Honor.  Perhaps --

24         THE COURT:  I would be more than happy to be

25  enlightened by Ms. Washington in any event on nolo contendere.

SAM      OCR      RMR      CRR      RPR

Proceedings                                    8

1          MS. ARGO:  Thank you, Your Honor.

2          THE COURT:  Since I think I took one when I was a

3    law clerk with Judge Costantino, but I think that was a --

4          MS. WASHINGTON:  Well, I'm happy to --

5          THE COURT:  -- hundred-and-two years ago.

6          MS. WASHINGTON:  Well, in fact, the Government has

7    found only cases from the 1960's that really address a plea

8    nolo contendere.  If the defendant were inclined to proceed

9    that way, the Government would vehemently oppose that for a

10   few reasons.

11         One is that it's only in extraordinary circumstances

12   that the Court usually exercises its discretion to accept such

13   a plea, and we believe that there are no extraordinary

14   circumstances here.

15         In fact, the Government sort of relatedly can't

16   even -- doesn't even have the authority to consent to a plea

17   nolo contendere, and would only do so in absolutely

18   extraordinary circumstances.

19         One of the factors that the Court can consider --

20         THE COURT:  I think Rule 11, by the way, was amended

21   since I was a law clerk.

22         MS. WASHINGTON:  So some of the factors that the

23   Court can consider are mitigating circumstances, the sound

24   administration of justice, as well as the interest of the

25   public.  And we believe here, given the victims in this case,

1   that it is really important for the defendant to admit guilt.

2   It would be a disservice to those victims if he were allowed

3   to plead without admitting guilt and allocuting to the conduct

4   at issue here.

5              THE COURT:  Okay.  We thank you, Ms. Washington.

6              I don't know if, after we hear from Ms. Setlzer

7   after she has had a conversation with Mr. Caroleo, whether

8   that will be of concern or not, but we certainly appreciate,

9   to me, an update on nolo contendere.  So we appreciate that,

10  Ms. Washington.

11             So we will take that brief recess and wait for

12  Ms. Setlzer.

13             MS. SELTZER:  And, perhaps, since it has not been on

14  the table since either this morning or last night, I didn't

15  get to see whatever time that e-mail was sent last night with

16  the plea offer, I didn't receive it.  But in any event, the

17  idea of pleading to the entire Indictment was new this morning

18  and" --

19             THE COURT:  That was from Mr. Caroleo?

20             MS. SELTZER:  Yes.

21             THE COURT:  Yes.

22             MS. SELTZER:  And, frankly, I don't have a

23  calculation in front of me about what the sentence would be,

24  so I don't want to misadvise him.  That's the bottom line.

25             THE COURT:  I think there are three, are there not

Proceedings                                    10

1    three mandatory minimum 15's?

2              MS. SULLIVAN-BENNIS:  Yes.

3              MS. MELTZER:  Well, it's a mandatory minimum 15 on

4    some, and a mandatory minimum of 10, I believe, on...  But the

5    question is what has to run consecutive, and I don't want to

6    give him the wrong advice.

7              Frankly, you know, it's just it just was something

8    that just popped up.

9              MS. ARGO:  Your Honor, just to be clear, there are

10   three counts with the 15-year mandatory minimum.

11             THE COURT:  Consecutive.

12             MS. ARGO:  The consecutive part I am not certain

13   about, Your Honor.

14             THE COURT:  That is a critical component.

15             MS. ARGO:  It is critical, Your Honor.  It's not my

16   understanding that they must run consecutive, but we can, when

17   we take that brief recess, make sure about that.

18             But also the other counts, there are three counts

19   that have five-year mandatory minimums.  That would be the

20   distribution counts and receipt counts, Your Honor.

21             THE COURT:  Right.

22             MS. ARGO:  And then possession there is no mandatory

23   minimum on those two counts.

24             And then there is, of course, also what's currently

25   not at issue in this trial, but, however, is certainly within

Proceedings                                              11

1   the Indictment, which is the felon-in-possession count,

2   Your Honor.

3            THE COURT:  Right.  Well, then, of course, are from

4   the guidelines perspective, things that can run concurrently

5   are important for Ms. Setlzer to know.

6            Jonathan, do we know?

7            THE LAW CLERK:  I am taking a look.

8            MS. SELTZER:  I don't know and I --

9            THE COURT:  I am going to ask Jonathan to take a

10  quick look at the Indictment.

11           (Pause.)

12           MS. ARGO:  Your Honor, our understanding is that it

13  is not mandatory, that it would be within Your Honor's

14  discretion.

15           THE COURT:  Well, that is true in every case.  In

16  every Indictment the Court can run any sentence consecutively.

17  The question here is whether the Court has -- so the

18  Government's best understanding is that none of the counts

19  need to run consecutively?

20           MS. ARGO:  We would appreciate just having a few

21  minutes just to make certain of that, Your Honor.

22           THE COURT:  Yes.

23           MS. ARGO:  Thank you.

24           THE COURT:  Well, while you are doing that, Jonathan

25  is doing it as well.  The magic of the computer in the

```
                        Proceedings                    12
```

1   courtroom, when they work.

2         (Pause.)

3         MS. SELTZER:  We have a new -- a non-wrinkle.

4         My client has decided to accept the Government's

5   plea offer that was extended this morning.

6         MS. ARGO:  Last night, but whatever.

7         MS. SELTZER:  Last night.

8         THE COURT:  Ms. Argo?

9         MS. ARGO:  The Government signed the plea.

10        THE COURT:  And that was in writing --

11        MS. SELTZER:  Yes.

12        THE COURT:  -- ladies?

13        MS. SELTZER:  But I would suggest before you dismiss

14  the jury --

15        THE COURT:  No, I am not dismissing the jury until

16  the plea is successfully allocuted.

17        MS. SELTZER:  We have been here before.

18        THE COURT:  Yes, I didn't get this gray hair because

19  I'm young.  I've been around the block a couple of times.  I

20  have three daughters also.

21        If the parties are ready, we are ready to allocute

22  the plea.

23        MS. SELTZER:  We are ready.  Are you ready,

24  Mr. Caroleo?

25        THE COURT:  Unless there is a reason, healthwise or

1   other, we normally do this at the bar.

2            MS. SELTZER:  Okay.

3            THE COURT:  All right, are you ready?

4            MS. SELTZER:  Yes, Your Honor.

5            MS. WASHINGTON:  One moment.  The Government just

6   needs one moment.

7            THE COURT:  Yes.

8            Ms. Argo, do you have the sentencing sheet, too, or

9   is it in the plea?

10           MS. WASHINGTON:  It's in the plea.

11           THE COURT:  Okay, that's fine.

12           MS. SELTZER:  Does this plea cover the gun?

13           MS. ARGO:  Yes.

14           Your Honor, I just want to put on the record just

15  briefly, just to make sure that we are all clear about the

16  discussions that we had earlier this morning and what is

17  occurring right now.

18           THE COURT:  Correct.

19           MS. ARGO:  Which is that we, I think, all determined

20  that no matter which way this would have gone, there was no

21  consecutive stacking sentences, as far as we can tell.

22           THE COURT:  That is what our research also shows.

23           MS. ARGO:  No matter which way this would have gone,

24  whether it would have been trial, a plea to the Indictment, or

25  what's currently occurring, which is the plea to this Plea

```
                    Proceedings                  14
```

1   Agreement.

2           THE COURT:  That is our understanding as well.

3           MS. ARGO:  All right, Your Honor, I just want to

4   make sure we are clear on that, that there was no --

5           THE COURT:  And we had the separate research done

6   when we were advised of this possibility, both by the

7   Government and by my law clerk, and we all seemed to have

8   reached the same conclusion.

9           MS. SELTZER:  Did you understand what they just

10  said?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Other than that, we are ready to

13  proceed?

14          MS. SELTZER:  Yes, Your Honor.

15          THE COURT:  Well, the record is, obviously, clear

16  that the defendant has indicated a desire to change his plea.

17  That being the case, we will ask the deputy clerk to

18  administer the oath.

19          THE COURTROOM DEPUTY:  Please raise your right hand.

20          Do you solemnly swear or affirm that the testimony

21  you are about to give will be the truth, the whole truth, and

22  nothing but the truth, so help you God?

23          THE DEFENDANT:  I do.

24          THE COURTROOM DEPUTY:  Thank you.

25          (Defendant sworn.)

Proceedings                                          15

1          THE COURT:  All right, Mr. Caroleo, notwithstanding

2     all the conversations we have had today and before, on and off

3     the record, should there have been any that were off the

4     record, I hope to think that all of them were on the record,

5     but in any event, there are a number of questions I must ask

6     you before I can accept your guilty plea to assure me that it

7     is, in fact, a valid guilty plea.

8          These questions are designed to assure me that you

9     understand the charge or charges against you, that you

10    understand the consequence of pleading guilty to those

11    charges, that you understand the rights that you have, the

12    rights that you waive by pleading guilty, that your decision

13    ultimately to plead guilty is not only knowing, knowing all of

14    those things, but voluntary.  And you also will have to tell

15    me under oath facts that show me that you, indeed, are guilty

16    of the crime or crimes to which you plead guilty.

17         So the questions that I ask are important, and to

18    the extent you either do not hear them or do not understand

19    them, then please let me know and I will repeat or rephrase

20    them for you.

21         Do you understand that?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  All right, now, certainly at this stage

24    of the criminal procedure, but at all the other ones as well,

25    you are entitled to be represented by competent counsel; and

SAM       OCR       RMR       CRR       RPR

Proceedings                                                     16

1   if you could not afford counsel, counsel would be appointed

2   for you.

3          Now, during this proceeding and standing with you

4   this morning is Ms. Setlzer, who has advised me on the call of

5   the calendar that she, indeed, represents you.

6          Is Ms. Setlzer your lawyer for this case?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, that means at any point during this

9   proceeding, to the extent that you need to speak privately

10  with Ms. Setlzer or Ms. Sullivan-Bennis or both, please let me

11  know and I will permit you to do so without any penalty.

12         Do you understand that?

13         THE DEFENDANT:  Yes, I do.  Thank you.

14         THE COURT:  Now, you've also taken an oath to tell

15  the truth.  So that means that if you answer any of the

16  questions put to you during this proceeding falsely,

17  regardless of who asks the question, then those answers later

18  can be used against you at a separate prosecution for the

19  crimes of perjury or making a false statement.

20         Do you understand that?

21         THE DEFENDANT:  I understand.

22         THE COURT:  All right.  Now, with all of those

23  understandings and all of the times that you have appeared

24  before me, it is still important for us to back up to the very

25  beginning and work forward.

```
                      Proceedings                    17
```

1        And so the very beginning question is to have you

2   place on the record your full name?

3        THE DEFENDANT:  Yes.  You want me to say it?

4        THE COURT:  Yes, please.

5        THE DEFENDANT:  Blaise Caroleo, Blaise Joseph

6   Caroleo.

7        THE COURT:  And, Mr. Caroleo, how old are you?

8        THE DEFENDANT:  55.

9        THE COURT:  And what is the highest grade you

10  attained in school?

11        THE DEFENDANT:  A high school diploma and trade

12  schools.

13        THE COURT:  All right, and the high school diploma

14  was earned where?

15        THE DEFENDANT:  It was -- it was a GED.

16        THE COURT:  In New York?

17        THE DEFENDANT:  In New York.

18        THE COURT:  In New York.

19        Now, are you currently or have you recently been

20  under the care of a medical doctor?

21        THE DEFENDANT:  Yes.

22        THE COURT:  And for what condition or conditions?

23        THE DEFENDANT:  A few.  Anxiety, depression,

24  bipolar, and other medical issues.

25        THE COURT:  I want to do this in two parts.

Proceedings                                    18

1              Is the doctor you're referring to a psychiatrist?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Let's do a medical doctor first.

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you been under the care of a

6   medical doctor as opposed to a psychiatrist?

7          THE DEFENDANT:  Yes, I have.  Yes.

8          THE COURT:  And for what conditions was that doctor?

9          THE DEFENDANT:  A bunch of conditions.  There's a

10  lot.  I don't have to mention them all, do I?  It's --

11         THE COURT:  Well, the ones that I am interested in

12  are the ones that might affect your ability to honestly and

13  accurately answer the questions that are put to you at the

14  hearing, so that if you have a bunion that aches --

15         THE DEFENDANT:  Okay, that -- there is no -- I don't

16  have any physical condition that would -- that would weigh

17  or -- weigh in that way.

18         THE COURT:  Now, you also indicated that you are

19  currently under the care of a psychiatrist?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And you started to indicate some of the

22  concerns that that psychiatrist are addressing.

23         Please repeat them and add to them if need be.

24         THE DEFENDANT:  Anxiety, depression and recently the

25  same -- I forgot what they used, but they said it's something

```
                        Proceedings                    19
```

1   short of bipolar.

2         THE COURT:  So these are conditions that you are

3   being currently treated for?

4         THE DEFENDANT:  Yes, correct.

5         THE COURT:  All right, now, these next questions

6   will sort of piggyback on that to some extent.

7         Have you in the last twenty-four hours taken any

8   narcotic drugs?

9         THE DEFENDANT:  None.

10        THE COURT:  In the last twenty-four hours have you

11  taken medications of any kind?

12        THE DEFENDANT:  Yes.

13        THE COURT:  And please indicate on the record what

14  those medications are, if you can recall.

15        THE DEFENDANT:  It's BuSpar, something -- there's

16  two other medications.  I don't know what they are.  I can't

17  remember the names.  Sinna (phonetic) something, Suda --

18  Sudofen or something like that, and something for hypothyroid.

19  That's it.

20        THE COURT:  And do these relate to the conditions

21  that the psychiatrist is treating?

22        THE DEFENDANT:  Yes, but I don't believe that they

23  weigh in my cognitive factors.

24        THE COURT:  So then I will go directly to that

25  question.

Proceedings                                                    20

1            Have they affected your ability or, more

2    importantly, have they impaired your ability to understand?

3            THE DEFENDANT:  Not at all, sir.

4            THE COURT:  Okay.

5            In the last twenty-four hours, I know this may sound

6    like why do you ask these questions, but, again, we want to

7    cover all the bases, in the last twenty-four hours have you

8    drank any alcoholic beverages?

9            THE DEFENDANT:  No, sir.

10           THE COURT:  And aside from the conditions you have

11   just told me about, have you ever been hospitalized or treated

12   for any other mental illnesses in the past?

13           THE DEFENDANT:  No.

14           THE COURT:  Have you ever been treated or

15   hospitalized for any addictions to drugs or alcohol?

16           THE DEFENDANT:  Not hospitalized, no.

17           THE COURT:  But you've had prior drug treatment?

18           THE DEFENDANT:  For surgeries I was taking

19   painkillers and got -- they were hard to get rid of, so I was

20   taking Suboxone to wean me off of them, but I was not

21   hospitalized for them.

22           THE COURT:  And as you appear in court this morning,

23   is your mind clear?

24           THE DEFENDANT:  Yes, it is, Your Honor.

25           THE COURT:  And you understand what's going on

Proceedings                    21

1   around you?

2          THE DEFENDANT:  I do.

3          THE COURT:  Now, Ms. Setlzer, you have spent a good

4   amount of time with Mr. Caroleo.

5          So I ask you, given all of that time do you believe

6   you had a fair amount of time to fully and fairly discuss with

7   Mr. Caroleo this case?

8          MS. SELTZER:  Beyond fair.

9          THE COURT:  Okay.

10          And on the basis of your conversations with

11   Mr. Caroleo, do you believe he understands the nature of the

12   proceedings that we are conducting at this time?

13          MS. SELTZER:  Yes.

14          THE COURT:  And do you believe he understands the

15   nature of the rights that he waives by pleading guilty?

16          MS. SELTZER:  Yes.

17          THE COURT:  And in your opinion, is he competent to

18   enter a plea at this time?

19          MS. SELTZER:  Yes.

20          THE COURT:  Have you discussed with him the maximum

21   sentence and fine that can be imposed?

22          MS. SELTZER:  Yes.

23          THE COURT:  And have you also discussed with him the

24   operation of the sentencing guidelines in the context of

25   recent court decisions?

Proceedings                                    22

1        MS. SELTZER:  (No response.)

2        THE COURT:  Yes?

3        MS. SELTZER:  Yes.

4        THE COURT:  Recent being, essentially, the advisory

5   nature of the guidelines.

6        And you have done that?

7        MS. SELTZER:  Oh, yes.

8        THE COURT:  All right, Mr. Caroleo, you just heard

9   Ms. Setlzer tell me that she believes she had a full and fair

10  opportunity to discuss your case with you.

11       Do you believe you have had a full and fair

12  opportunity to discuss your case with her?

13       THE DEFENDANT:  I would agree with Ms. Setlzer, more

14  than fair.

15       THE COURT:  And on the basis of your dealings with

16  her, are you satisfied with the advice you have received?

17       THE DEFENDANT:  I'm more than satisfied.  She's a

18  very good attorney.  I'm more than pleased with her.

19       MS. SELTZER:  Thank you.

20       THE COURT:  Well, I am happy to hear that, and I

21  agree with you also.

22       Now, what I want to do next, having said all of

23  that, this may sound a little odd, and what we do here is,

24  because the rights that we have are so precious, even though

25  you have told me you have had a full and fair discussion with

SAM     OCR     RMR     CRR     RPR

Proceedings                              23

1   Ms. Setlzer, we are going to go over some of those rights

2   again because they are that important, that they should not be

3   waived without some memorialization of the process.

4              So the first and most important thing you have to

5   understand is that even if you are guilty, you do not have to

6   plead guilty.  Under the Constitution and the laws of the

7   United States it is the Government's burden to establish the

8   guilt of a defendant beyond a reasonable doubt.  And if the

9   prosecutor cannot or does not meet her burden of proof, then

10  the jury has the duty to find that defendant not guilty.

11             So what that means is even if you are guilty, you

12  still have a choice.  It is up to you to decide what to do,

13  not your lawyer or anyone else.  And you may withdraw your

14  plea of not guilty and enter a plea of guilty, as you

15  apparently wish to do, or you may maintain your plea of not

16  guilty and make the Government meet its burden of proving you

17  guilty.

18             Do you understand that?

19             THE DEFENDANT:  I do understand.  My -- my -- my

20  problem was never with claiming responsibility or with the

21  Government, it was with the actual law, itself, and I can't

22  fight that here.

23             THE COURT:  No.  We know your opposition, but you

24  can't.

25             THE DEFENDANT:  I understand.

Proceedings                                         24

1          THE COURT:  Now, and if you were to plead not

2     guilty, you would be entitled to a speedy and public trial.

3     In fact, the jury has already been selected.  You have your

4     lawyer, who would represent you, and it would be right here in

5     this courtroom.

6          Do you understand that?

7          THE DEFENDANT:  I do.

8          THE COURT:  And by pleading guilty, you are going to

9     forego that opportunity.

10          Do you understand?

11          THE DEFENDANT:  I do.

12          THE COURT:  Now, at the trial you would be presumed

13     innocent, as all defendants are.  You would not have to prove

14     that you were innocent.

15          Do you understand that?

16          THE DEFENDANT:  I do.

17          THE COURT:  It would be the Government's burden to

18     prove your guilt.

19          Do you understand that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  But by pleading guilty, you are

22     relieving the Government of its burden of establishing your

23     guilt beyond a reasonable doubt.

24          Do you understand that?

25          THE DEFENDANT:  I understand.

Proceedings                                    25

1        THE COURT:  Now, at the trial, the witnesses for the

2   Government would have to come into open court.  Your lawyer

3   could cross-examine those witnesses for the Government.  She

4   could object to evidence offered by the Government.  You could

5   raise defenses on your own behalf, call witnesses on your own

6   behalf, including witnesses you could compel to testify, even

7   if they didn't want to.

8        Do you understand that?

9        THE DEFENDANT:  I do understand that.

10       THE COURT:  But by pleading guilty you are giving up

11  your right to confront the witnesses who would testify against

12  you, you give up your right to raise defenses and offer proof

13  on your own behalf.

14       Do you understand that?

15       THE DEFENDANT:  I'm claiming responsibility to avoid

16  them having to do that.

17       THE COURT:  The Court notes that.

18       At this trial you would have the right to take the

19  witness stand and testify in your own behalf.

20       You understand that?

21       THE DEFENDANT:  I do.

22       THE COURT:  But you also understand that you could

23  not be compelled to take the witness stand, a defendant in a

24  criminal case in the United States cannot be forced to take

25  the witness stand and say anything that could be used against

1   him to show that he is guilty of the crimes with which he has

2   been charged.  This is called your right against

3   self-incrimination, and at trial you would invoke that right

4   and I would instruct the jury that they could not hold that

5   fact against you.

6           But by pleading guilty, you are admitting your guilt

7   and you give up your right against self-incrimination.

8           Do you understand that?

9           THE DEFENDANT:  I do understand.  Yes, I do

10  understand.

11          THE COURT:  Now, as I previewed a little bit

12  earlier, not only do you give up your right against

13  self-incrimination, but there will come a point, either

14  through a narrative that you will recite to me or through

15  questioning, where you will provide me facts on the record,

16  under oath, that show that you, indeed, are guilty of the

17  charge to which you plead guilty.

18          Do you understand?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  Now, if you do offer your plea and I

21  accept it, you will be giving up all of the rights I just

22  discussed.  There will be no trial of any kind.  I will simply

23  enter a judgment of conviction on the basis of your guilty

24  plea.

25          Do you understand that?

Proceedings                    27

1          THE DEFENDANT:  I do.

2          THE COURT:  All right, now, Ms. Argo, is there an

3  appellate waiver in this Plea Agreement?

4          MS. ARGO:  Yes, Your Honor, there is.  It is in

5  paragraph 4 of the agreement.  That is on page 4, Your Honor.

6          THE COURT:  And it is set up?

7          MS. ARGO:  The first sentence, I think, is the most

8  important one, which is that the defendant agrees not to file

9  an appeal or otherwise challenge by 28 U.S.C. 2255 or any

10  other provision, the conviction or sentence in the event that

11  the Court imposes a term of imprisonment of 360 months or

12  below.

13          He also then goes on to waive other rights of appeal

14  or collateral review with respect to his pleading guilty would

15  be unconstitutional or that the admitted conduct does not fall

16  within the scope of the statute.

17          THE COURT:  All right, so what this appellate waiver

18  means, Mr. Caroleo, if you went to the trial before this Court

19  and the jury, then you could appeal both the conviction and

20  the sentence that the Court imposed, but by agreeing in a Plea

21  Agreement to this appellate waiver, you would be giving up

22  your right to challenge the conviction or any or all of the

23  sentence that I impose.

24          Do you understand that?

25          THE DEFENDANT:  I understand.

Proceedings                              28

1          THE COURT:  And also that includes collateral

2    proceedings, which means you could not do it later down the

3    road by challenging the proceeding even after an appeal.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  All right.  And we do have the Plea

7    Agreement that the deputy clerk has handed to me, and he has

8    also marked it as Court's Exhibit 1.

9          (Court Exhibit 1 was so marked.)

10         THE COURT:  And on the last page of the Plea

11   Agreement, which appears to be page 12 if the eyes are working

12   temporarily, I do see signatures affixed.  And William is way

13   ahead of the game and he is going to hand it to Mr. Caroleo.

14         Mr. Caroleo, on that last page of Court's Exhibit 1,

15   is that your signature?

16         THE DEFENDANT:  Yes, it is.

17         THE COURT:  Ms. Setlzer, have you signed it?

18         MS. SELTZER:  Yes.

19         THE COURT:  Ms. Argo?

20         MS. ARGO:  Yes, Your Honor.

21         THE COURT:  Anyone else?

22         MS. ARGO:  Just the Supervising Assistant U.S.

23   Attorney has signed as well.

24         THE COURT:  Mr. Caroleo, before you placed your

25   signature on Court's Exhibit 1, the Plea Agreement, did you

```
                          Proceedings                    29
```

1   read it?

2          THE DEFENDANT:  Yes, I did.

3          THE COURT:  Did you discuss it fully with

4   Ms. Setlzer?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And at the time you signed it, did you

7   understand it?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  At the time you signed it, did you sign

10  it voluntarily?

11         THE DEFENDANT:  Yes, I did.

12         THE COURT:  And do you understand it now?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  And this Plea Agreement, Court's

15  Exhibit 1, does that represent the entire agreement or

16  understanding that you have with the Government about this

17  case?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Now, Ms. Setlzer, you did have the

20  conversation with Mr. Caroleo?

21         MS. SELTZER:  Yes.

22         THE COURT:  And based on your conversations with him

23  on the Plea Agreement, do you believe he understood it?

24         MS. SELTZER:  Yes.

25         THE COURT:  And based on those conversations, do you

Proceedings                                                30

1    believe he signed the Plea Agreement voluntarily ly?

2              MS. SELTZER:  Yes.

3              THE COURT:  And to the best of your knowledge and

4    information, this is the only arrangement or deal that

5    Mr. Caroleo has with the Government about this case?

6              MS. SELTZER:  Yes.

7              THE COURT:  All right, now, I want to go over this.

8    Again, this is also important, like your rights, Mr. Caroleo.

9    So even though you and Ms. Setlzer have just told me you have

10   done this, it is important to do it in open court to make sure

11   that we are all of the same understanding.

12             And given my visual limitations, Ms. Argo, I am

13   going to ask you to assist.

14             MS. ARGO:  Yes, Your Honor.

15             THE COURT:  So this plea is to just one count of the

16   Indictment, is that right?

17             MS. ARGO:  Yes, Your Honor.  It's a plea to Count

18   Four of the Superseding Indictment.

19             THE COURT:  Count Four of the Superseding

20   Indictment.

21             MS. ARGO:  Yes.

22             THE COURT:  And why don't you sketch out for us

23   exactly what this count charges?

24             MS. ARGO:  Yes, Your Honor.

25             Count Four charges the sexual exploitation of a

SAM      OCR      RMR      CRR      RPR

Proceedings                                                      31

1   child.  On or about and between January 24th, 2016 and October

2   12th, 2016, both dates being approximate and inclusive within

3   the Eastern District of New York and elsewhere, the defendant,

4   Blaise Caroleo, also known as Nimfeater, did knowingly and

5   intentionally employ, use, persuade, induce, entice and coerce

6   a minor, to wit:  Jane Doe Number 1, an individual who is

7   known to the Grand Jury, to engage in sexually explicit

8   conduct, for the purpose of producing one or more visual

9   depictions of such conduct, knowing and having reason to know

10  that such visual depictions would be transported and

11  transmitted using a means and facility of interstate and

12  foreign commerce in and in and affecting interstate and

13  foreign commerce, which visual depictions were produced and

14  transmitted using materials that have been mailed, shipped and

15  transported in and affecting interstate and foreign commerce

16  by any means, to wit:  One or more mobile Internet devices,

17  computers and smartphones, and such visual depictions were

18  actually transported and transmitted using a means and

19  facility of interstate and foreign commerce and in and

20  affecting interstate and foreign commerce.

21           THE COURT:  And, Mr. Caroleo, that is the charge you

22  understand you are pleading guilty to?

23           THE DEFENDANT:  Yes, I do understand.

24           THE COURT:  Now, Ms. Argo, there is a minimum

25  sentence on that, is that a 15-year minimum?

Proceedings                32

1          MS. ARGO:  Yes, Your Honor.  So in 1(b) of the Plea

2     Agreement, the minimum term of imprisonment under 18 U.S.C.

3     2251(e) is 15 years.

4          THE COURT:  And the maximum is?

5          MS. ARGO:  The maximum term of imprisonment under

6     that same statute is 30 years, Your Honor.

7          THE COURT:  All right.

8          So you understand, Mr. Caroleo, that with respect to

9     this count that the Court must impose a sentence of not less

10    than 15 years, but may impose a sentence of as much as 30

11    years?

12         THE DEFENDANT:  I do understand.

13         THE COURT:  All right.

14         Now, there is a provision on supervised release,

15    correct?

16         MS. ARGO:  Yes, Your Honor.

17         The minimum supervised release term is five years;

18    the maximum supervised release term is life, to follow any

19    term of imprisonment.  If the condition of release is

20    violated, the defendant may be sentenced to up to five years

21    without credit for prerelease imprisonment or time previously

22    served on post release supervision.

23         THE COURT:  Okay.

24         MS. ARGO:  And if the defendant commits any criminal

25    offense under Chapter 109A, 110 or 117 or Title 18 United

Proceedings                                              33

1    States Code Sections 1201 and 1591 for which imprisonment for

2    a term longer than one year can be imposed, the defendant

3    should be sentenced to not less than five years and up to the

4    maximum term of imprisonment for the offense as set forth

5    above in paragraph 1(a).

6              THE COURT:  So generally what kind of offenses that

7    are listed there?

8              Do we have an understanding?

9              MS. ARGO:  Yes, Your Honor.  1591, I believe, is

10   also related to similar conduct.  One moment, Your Honor.

11             THE COURT:  You can look at that.  I am going to

12   explain a little bit more, and then I will come back to you,

13   Ms. Argo.

14             This concept of supervised release is simply this:

15   At any time a defendant is sentenced to a period of custody,

16   that defendant will ultimately be released from imprisonment.

17   And when that release occurs, it occurs with certain terms and

18   conditions, Mr. Caroleo.

19             And also, there is a period of supervised release

20   that refers to that period following release.  And if a term

21   or condition of release were to be violated during whatever

22   period is set for supervised release, well, then there is a

23   custodial consequence that can be imposed.  And that

24   consequence is in addition to any time that had been spent in

25   prison or has been spent on supervised release.

Proceedings                                        34

1           Do you understand that?

2           THE DEFENDANT:  I understand.

3           THE COURT:  You do understand?

4           THE DEFENDANT:  Yes, I do understand.

5           THE COURT:  So in this case, the period of

6    supervised release, again, Ms. Argo, is a minimum of five

7    years, a maximum of life.

8           Do you understand that?

9           THE DEFENDANT:  Yes, I do.

10          THE COURT:  And for a violation of supervised

11   release during whatever period is set, you could be sent back

12   to prison for up to five years.  Again, without credit for

13   time previously served or time spent on post release

14   supervision.

15          And in addition that, there is a further provision

16   that Ms. Argo is now going to illuminate the record about,

17   that there are certain kinds of offenses that trigger a more

18   serious potential prison sentence or violation.  And those

19   are...

20          MS. ARGO:  Yes, Your Honor.

21          So Chapter 109A deals with sexual abuse.  So any of

22   those statutes enumerated therein would be one of those

23   qualifying offenses.

24          The next one is Chapter 110, which are sexual

25   exploitation and other abuse of children.  Any of those

Proceedings                                              35

1    statutes that fall under that chapter.

2              In addition, Chapter 117, which is the

3    transportation for illegal sexual activity and related crimes,

4    those are all those particular statute provisions.

5              Then the other one mentioned here in paragraph 1(c)

6    is 18 United States Code Section 1201, and that is for

7    kidnapping.

8              And then lastly, 15 -- 18 United States Code

9    Section 1591.  And that is for sex trafficking of a minor for

10   which -- so that would be all of those particular crimes that

11   would be encompassed therein.

12             THE COURT:  So with respect to those, there is a

13   mandatory minimum of five years for violation?

14             MS. ARGO:  Yes, Your Honor, he shall -- that's

15   correct.  There is a mandatory minimum of five years and up to

16   the maximum term of imprisonment for the offense.

17             THE COURT:  Do you understand that, Mr. Caroleo?

18             THE DEFENDANT:  I do understand.

19             THE COURT:  Now, with respect to fines, Ms. Argo.

20             MS. ARGO:  Yes, Your Honor.

21             The maximum fine to be imposed here is $250,000.

22             THE COURT:  All right, do you understand that,

23   Mr. Caroleo?

24             THE DEFENDANT:  Yes, I do.  I don't have any way of

25   paying that, but I do understand it.

Proceedings                                    36

1          THE COURT:  Well, you have to understand that that

2     is what you are exposed to.  You might buy a lottery ticket,

3     who knows.

4          THE DEFENDANT:  Yeah, I understand.

5          THE COURT:  Is there a forfeiture provision?  I

6     would assume so.

7          MS. ARGO:  So, there is, Your Honor.  Actually, I

8     just want to go through in paragraph 1(e) there is a

9     restitution paragraph.

10          THE COURT:  We are going to get to the restitution.

11     Go ahead.

12          Do you want to go there?

13          MS. ARGO:  Is it all right, Your Honor?

14          THE COURT:  Yes, do the restitution.  Because do the

15     changes affect this sentencing?

16          MS. ARGO:  So typically, Your Honor, restitution is

17     only for the count of conviction.  There are three victims in

18     this case and, therefore, the Government has provided

19     specifically for those three victims in this agreement.

20          The parties agree that restitution should be ordered

21     by the Court for all three victims named in the Superseding

22     Indictment, namely Jane Doe Number 1, Jane Doe Number 2 and

23     Jane Doe Number 3, irrespective of the count of conviction.

24          Furthermore, the defendant agrees and stipulates

25     that for purposes of crime victim rights pursuant to 18 U.S.C.

Proceedings                                     37

1   2259(a) at 3771(e) all three above-named victims shall have

2   the rights of a victim as set forth in those same statutes as

3   if they had been named in the count of conviction and as set

4   forth below in paragraphs 14 through 18 of the Plea Agreement.

5              THE COURT:  So to some extent this is a technical

6   point, but from the practical point to you, Mr. Caroleo, that

7   means that at some point the Court will compute restitution,

8   which can come at the time of sentence or it could even come

9   after the time of sentence, and that you would be responsible

10  regardless of the count of conviction for restitution to the

11  three Jane Does that are name in the Superseding Indictment.

12             Do you understand that?

13             THE DEFENDANT:  Wouldn't I be responsible regardless

14  to my financial position?  Because I mean I don't foresee me

15  being able to work.

16             THE COURT:  Yes, but it is like anything else, it is

17  a judgment.  If you can't pay the judgment, then --

18             THE DEFENDANT:  What happens?

19             THE COURT:  -- you can't pay the judgment.

20             THE DEFENDANT:  Oh, I understand.  I don't go back

21  to jail for that , do I?

22             THE COURT:  No, it doesn't convert to extra

23  jailtime.  If that is the question.

24             THE DEFENDANT:  That was my question, yes.

25             THE COURT:  No.

SAM     OCR     RMR     CRR     RPR

Proceedings                                     38

1          THE DEFENDANT:  All right.

2          THE COURT:  It doesn't convert to extra jailtime,

3    but the judgment is there, and to some extent I use it, to

4    some extent facetiously, but you could, for whatever reason,

5    no one knows what your circumstances are financially, you may

6    come into circumstances where you could pay the judgment.

7          THE DEFENDANT:  And considering that, to what end

8    would that be the judgment, considering if I do come into a

9    way to pay it, to what end am I agreeing to pay it?

10         THE COURT:  I have to compute it first.

11         THE DEFENDANT:  Okay.

12         THE COURT:  That was the point I was making is that

13   we have not computed it.  That is a separate proceeding that

14   can occur.

15         THE DEFENDANT:  Okay.

16         THE COURT:  But it is a litigated proceeding.

17         THE DEFENDANT:  I understand, okay.

18         THE COURT:  So you will be heard through your

19   counsel at that hearing.

20         THE DEFENDANT:  I understand.

21         THE COURT:  But for purposes of the plea allocution,

22   you have to be made aware that there will be a restitution

23   proceeding for those three victims and some sort of

24   restitution judgment will be entered after the court computes

25   what the restitution is.

Proceedings                                    39

1          THE DEFENDANT:  I understand.

2          THE COURT:  Unlike a fine, we know that the fine can

3     be up to $250,000.

4          THE DEFENDANT:  Right.

5          THE COURT:  There is one other monetary penalty,

6     which is the Court is required to impose a special statutory

7     assessment, which is not less than a hundred, Ms. Argo?

8          MS. ARGO:  Yes, Your Honor.

9          So there is a provision here in 1(f) for the

10    hundred-dollar special assessment under 18 U.S.C. 3013.

11    However, in this case, there is also an additional special

12    assessment that qualifies.  And that is 18 U.S.C. 3014(a)(3).

13    That statute reads -- if I could just read the (a) portion of

14    that statute:

15          Beginning on the date of enactment of the Justice

16    For Victims of Trafficking Act of the 2015 and ending on or

17    about September 30th, 2021, in addition to the assessment

18    imposed under Section 3013, the Court shall assess an amount

19    of $5,000 on any non-indigent person or entity convicted of an

20    offense under Chapter 110, which relates to sexual

21    exploitation and other abuse of children.

22          Now, obviously, Your Honor, I think, has some

23    discretion within that statute because it does say

24    non-indigent persons.  If Mr. Caroleo is able to prove that he

25    is, in fact, indigent, I think Your Honor can exercise

Proceedings                                             40

1    discretion on that statute.

2              THE COURT:  So there is the possibility of an

3    additional five-thousand-dollar special assessment, and that

4    is something that is going to await sentencing, Mr. Caroleo.

5              The Probation Department will be doing a financial

6    assessment of your ability to pay these things.  And that also

7    is contestable at the time of sentence.

8              Do you understand that?

9              THE DEFENDANT:  I do understand.

10             THE COURT:  Now, I assume the offending images and

11   the like, all of that material has already been forfeited,

12   Ms. Argo?

13             Is there some order that has to be entered with

14   respect to that?

15             MS. ARGO:  Yes, Your Honor.  Actually, we have -- we

16   are going to actually get a preliminary order of forfeiture to

17   Your Honor with respect to that.  We weren't quite prepared

18   for that today, but within the Plea Agreement there is a

19   provision for that.

20             So paragraph 1(h) actually lays out those additional

21   penalties.  That would include sex offender registration

22   pursuant to the sex offender registration.

23             THE COURT:  You understand you have to register as a

24   sex offender when you are released from custody?

25             THE DEFENDANT:  Yes, I understand.

Proceedings                                    41

1          THE COURT:  Yes.

2          MS. ARGO:  And that is set forth in paragraph 20 of

3    the agreement.

4          In addition to that, the criminal forfeiture is set

5    forth in paragraphs 6 through 13 of the agreement.  And that

6    provides for, just as Your Honor was suggesting, that all of

7    the devices that were used and contain these child pornography

8    images would be forfeited by the defendant.

9          THE COURT:  You understand that, Mr. Caroleo?

10         THE DEFENDANT:  I do understand, but there was a lot

11   of stuff taken that had nothing to do with the case and that

12   will be returned, I assume.

13         THE COURT:  You are talking about -- not the

14   hardware, you are talking about other things?

15         THE DEFENDANT:  Hardware, family videos and

16   obviously --

17         THE COURT:  I assume that is the case, Ms. Argo, is

18   it not?

19         THE DEFENDANT:  I understand.

20         MS. ARGO:  Just to be clear, Your Honor, the

21   agreement does set forth these specific devices that would be

22   forfeited and that would include a Motorola XT1565 Droid MAXX2

23   cell phone that's seized from the defendant on or about

24   February 24th, 2016; one HTC D100LVW cellular phone.

25         THE COURT:  I don't think he is contesting the

SAM      OCR      RMR      CRR      RPR

Proceedings                                    42

1   hardware, what he is concerned about is family pictures and

2   the like, those things.

3          THE DEFENDANT:  I wasn't there, but I think my wife

4   said there were videos of the kids when they were small and

5   her personal tablet, I think, was taken.

6          MS. ARGO:  Those items can be returned to one of

7   Mr. Caroleo's family members.  That's not an issue.

8          THE COURT:  You understand that, Mr. Caroleo?

9          THE DEFENDANT:  Yes, I do.  Thank you.

10         THE COURT:  And, yes, anything consequence-wise,

11  Ms. Argo?

12         MS. ARGO:  Yes, just one moment, Your Honor.  May I

13  confer with Ms. Washington?

14         THE COURT:  Yes, please.

15         (Pause.)

16         MS. ARGO:  Just one moment, we are just indicating

17  something to Ms. Setlzer here.

18         (Pause.)

19         MS. SELTZER:  So the understanding, Your Honor, as I

20  read it, I apologize, but this is all occurring pretty quickly

21  this morning, is that paragraph 5, in essence, is an agreement

22  that the remaining counts in the Indictment will be dismissed.

23         Is that correct?

24         MS. ARGO:  Yes.  Just to be clear about what the

25  agreement states and to be sure that the defendant completely

Proceedings                                                      43

1    understands the nature of what he is agreeing to, paragraph

2    5(a) lays out all of the charges within the Superseding

3    Indictment.  That would be Counts One through Nine, which

4    encompass receipt; distribution of child pornography;

5    possession of child pornography, two counts; as well as sexual

6    exploitation and attempted sexual exploitation.  Those are

7    Counts Four, Five and Six, as well as Count Nine, which is

8    that the defendant was a felon in possession of a firearm

9    after having been previously convicted of a felony.

10            And the understanding within this agreement is that

11   it does not bar the use of this conduct as a predicate act or

12   the basis for sentencing enhancement, but that at the time of

13   sentence the Government will move to dismiss the remaining

14   counts of the Superseding Indictment with prejudice.

15            THE COURT:  Which is the normal practice?

16            MS. ARGO:  Yes, Your Honor.

17            THE COURT:  Is that satisfactory, Mr. Caroleo?

18            THE DEFENDANT:  Yes, it is.  Thank you.

19            THE COURT:  Is there anything else on the

20   consequences, Ms. Argo, that I missed?

21            MS. ARGO:  No, Your Honor, that covers it.

22            THE COURT:  Then I have one last question, just to

23   button it up.

24            Mr. Caroleo, are you a citizen of the United States?

25            THE DEFENDANT:  Yes, I am.

Proceedings                                    44

1          THE COURT:  The reason I ask that is if you were

2     not, the mere fact that you pled guilty to this offense could

3     lead to your deportation, removal or exclusion from the United

4     States.

5          Do you understand that?

6          THE DEFENDANT:  Trump didn't make you ask that, did

7     he?

8          I understand.  I said Trump didn't make you ask

9     that, did he?

10         THE COURT:  No, no, no, this is --

11         THE DEFENDANT:  I do understand.

12         THE COURT:  Believe me, it is important because it

13    has come up before.

14         THE DEFENDANT:  Okay.

15         THE COURT:  And sometimes people profess to be

16    citizens of the United States and have either lied to the

17    Court or are inaccurate in their recollection.

18         THE DEFENDANT:  Gotcha, I understand.

19         THE COURT:  So this is why we --

20         MS. SELTZER:  I believe part of the Government's

21    evidence was his birth certificate.

22         MS. ARGO:  Yes, Your Honor, that's true.

23         THE COURT:  I always ask.

24         THE DEFENDANT:  Okay, I understand.

25         THE COURT:  It doesn't matter.  I ask every time.

Proceedings                                              45

1   Better to ask and get the answer, than not ask at all.

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  All right, now we have now gone over the

4   possible consequences, but I want to go back to possible

5   consequences of that, they can be this or they can be that.

6                There is one part of the agreement that is a

7   contract, it is clear and it will be binding, and that is that

8   appellate waiver that I mentioned earlier in the proceeding.

9                You do understand that if I sentence you to a

10  sentence of 360 months or below, you will be giving up your

11  right to file an appeal or collaterally attack either the

12  conviction or the sentence that I impose; do you understand

13  that?

14               THE DEFENDANT:  I do understand that.

15               THE COURT:  All right, that being the case I want to

16  move to next the process of sentencing, itself.  Again,

17  because as we tick them off there are possible consequences of

18  a plea.  And what is important to understand here is that the

19  mere fact that there are possible consequences does not mean

20  that the sentencing judge is free to pick a number out of

21  somewhere in the middle.  There is a process for deciding

22  where a sentence should be, at what point in the middle a

23  sentence should fall, and that process begins with the

24  guidelines promulgated by the United States Sentencing

25  Commission.  The Sentencing Commission has promulgated

Proceedings                                           46

1    guidelines that pinpoint a specific sentence for any given

2    offense, and then point to factors that could lead a Court to

3    depart from that number, either upwardly or downwardly.  But

4    these guidelines are no longer mandatory, though they remain

5    advisory.  So what that means is even though they are not

6    mandatory, the Court must consult them and take advice from

7    them.

8               Do you understand that?

9               THE DEFENDANT:  I do understand that.

10              THE COURT:  So what happens now?

11              I sort of gave you a little preview.  What happens

12   next is the work of the Probation Department.  The Probation

13   Department will conduct a separate investigation that looks

14   into the facts and circumstances of this offense, the facts

15   and circumstances of your life, whether you have a prior

16   criminal past, what your family circumstances are, health, and

17   the like, and make a report.  That report will be sent to you

18   and Ms. Setlzer, it will be sent to Ms. Argo, it will be sent

19   to me, and included in the report of the Probation

20   Department's investigation of the case will be a

21   recommendation that the Probation Department makes with

22   respect to the guidelines, what the offense level should be,

23   what the criminal history category level should be, and that

24   will be contained in the pre-sentence investigation report.

25              Now, no one can predict with precision what

Proceedings                                        47

1    Probation will recommend.  And no one, including me, can

2    predict what I will do with the recommendation when I get it,

3    but it will be there.

4              After that report has been circulated, all of us

5    will have an opportunity to review it, digest it, and then we

6    will come back to court for another hearing, just like this

7    one.  The first thing that I will do at the hearing after

8    listening to counsel, I will actually perform the algebra of

9    guidelinesology and compute what the offense level and the

10   criminal history category should be in your case.

11             We will then move into the actual sentencing

12   process, which is covered by another section Title 18 United

13   States Code Section 3553(a).  And this provision of law tells

14   the Court how to sentence, what the objectives, the standards,

15   the goals are.  Nothing too surprising, I would think.  I

16   would think most people, even lay people, would think this is

17   how a sentencing is done in the United States, what the

18   touchstones are, what the Court should be considering.

19             First, the Court should be considering punishment,

20   the fact that there has been a wrong done, a punishment, a

21   penalty, something that hurts should be imposed.  And the more

22   serious the crime, then, well, the more serious the punishment

23   is what the section tells us.  The section tells us the

24   sentence should also promote respect for the law.  Congress

25   passes laws and if the defendant does not respect the law or

1    violates the section, to the extent that Congress attaches

2    penalties and the courts never impose them, there is not going

3    to be so much respect for the law.  So there is a concern that

4    there should be some harmony between the violation and penalty

5    that the Congress attaches to it.

6              There is also a great concern on deterrence.  I

7    usually refer to this as the hot stove.  You touch the hot

8    stove, it hurts.  Then sort of you remember not to touch the

9    hot stove.  So there is that concept as well.  If you impose a

10   penalty that imposes a pain, a punishment, it will remind the

11   defendant not to do it again.  And it also will stand in line

12   with the English common law system of general deterrence, that

13   a penalty imposed on somebody else will stand as a warning to

14   the public at large not to do that or the penalty will be

15   imposed on them as well.

16             There is also the concept of incapacitation, if you

17   will, that a defendant is so much of a threat to the public,

18   that the defendant ought to be removed from public contact to

19   prevent him or her from committing further crimes.

20             There is also, obviously, the concept of

21   rehabilitation, that there is a time when that defendant is

22   going to move to supervised release.  And to the extent the

23   defendant needs help, either physically or mentally or

24   skill-wise to try to facilitate a re-entry, a productive

25   re-entering into society, that the penal system and the

Proceedings                                                49

1    sentence should promote that.

2          And you take into consideration personal

3    characteristics and the characteristics of the crime, so that

4    people who are similarly situated, committing the same crime,

5    get similar kinds of penalties as well.

6          And then the Court is instructed by the section to

7    balance all of these factors and then impose a sentence that

8    is no harsher than necessary.

9          Do you understand the concept of sentencing?

10         THE DEFENDANT:  I do.

11         THE COURT:  Now, as I said to you, no one could

12   predict with precision what the Probation Department will

13   recommend to the Court or the Court will do with the

14   recommendation, but counsel, at times, could look at the facts

15   as they believe them to be and make a prognostication estimate

16   of what they think Probation might recommend.

17         Ms. Argo, has the Government made any estimate as to

18   what you think Probation will find to be the guidelines?

19         MS. ARGO:  Yes, Your Honor.

20         The Government has made such an estimate.  On page 3

21   of the Plea Agreement, we've established that the calculation

22   results in a total of 43 points, and that he does get two

23   points off for signing this agreement, which brings it down to

24   an adjusted offense level of 41.  That results in a range of

25   imprisonment of 360 months to life, assuming the defendant

Proceedings                                    50

1   false within Criminal History Category II.  However, by

2   operation of the statutory maximum penalties for Count Four,

3   the effective guidelines range of imprisonment is 360 months.

4           THE COURT:  So you see, there is a restricted

5   guideline of 360?

6           MS. ARGO:  Correct, Your Honor.

7           THE COURT:  And, Ms. Setlzer, have you made any

8   estimates of your own?

9           MS. SELTZER:  Well, I've reviewed the Government's

10  and they seem, without giving up any rights to argue against

11  them, I understand what the Government's predictions are and I

12  have communicated that to my client.

13          THE COURT:  All right.

14          All right, this is the point, Mr. Caroleo --

15          MS. ARGO:  Sorry, I apologize, Your Honor.  I hate

16  to interrupt, but I just want to make clear about what's

17  within -- contained within this agreement, which is that the

18  defendant stipulates to that guidelines calculation.

19          THE COURT:  So you stipulated it, so it doesn't come

20  as a surprise to you, but, ultimately, you understand that it

21  is what I calculate that counts?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  So I wanted you to have that in mind at

24  the time of your plea.

25          So that being the case, I pause for the following:

Proceedings                                   51

1   If there is anything that we have done at the hearing that you

2   have questions about, the reporter will take your questions

3   down and I will try to answer them publicly on the record.

4            To the extent that you need to speak to counsel

5   privately, I would give you time for that, but if you don't

6   need time for either of those things, I just move to take your

7   plea.

8            THE DEFENDANT:  Okay.

9            THE COURT:  Do you need additional time,

10  Mr. Caroleo, or are you ready now?

11           THE DEFENDANT:  No, I don't.  I understand.  I

12  understand everything.

13           THE COURT:  Are you ready to offer your plea?

14           THE DEFENDANT:  Yes; I understand everything.

15           THE COURT:  So let me begin with you, Ms. Setlzer.

16           Do you know of any reason why Mr. Caroleo should not

17  enter a plea of guilty at this time?

18           MS. SELTZER:  No.

19           THE COURT:  Are you aware of any viable legal

20  defense to the charge?

21           MS. SELTZER:  No.

22           THE COURT:  All right.

23           Then, Mr. Caroleo, with respect to Count Four of the

24  Superseding Indictment, what is your plea, guilty or not

25  guilty?

Proceedings                                                      52

1              THE DEFENDANT:  Guilty.

2              THE COURT:  And, Mr. Caroleo, are you pleading

3       guilty voluntarily and of your own free will?

4              THE DEFENDANT:  Yes, I am.

5              THE COURT:  Has anyone forced you or threatened you

6       to plead guilty?

7              THE DEFENDANT:  No.

8              THE COURT:  Has anyone, other than the promises set

9       forth in the Plea Agreement marked as Court's Exhibit 1, has

10      anyone made any promises to you to get you to plead guilty?

11             THE DEFENDANT:  No.

12             THE COURT:  Has anyone made any promises to you as

13      to what your final sentence will be?

14             THE DEFENDANT:  No.

15             THE COURT:  All right.

16             Now, earlier in the hearing I mentioned there would

17      come a point where you would have to tell me under oath what

18      it is that you say you did to lead you plead guilty to Count

19      Four.  We have reached that point in the proceeding.

20             And, Ms. Setlzer, I don't know how you are going

21      forward here.  Is there a narrative he is going to read or

22      recite or is it going to be by colloquy?  You tell me.

23             THE DEFENDANT:  Well, I think there was --

24             MS. SELTZER:  Well, I can underline the parts of

25      the --

Proceedings                                53

1          MS. SULLIVAN-BENNIS:  Indictment.

2          MS. SELTZER:  -- of the indictment.  Thank you.

3          (Pause.)

4          MS. SELTZER:  You can just read from there, if you

5    want.

6          THE DEFENDANT:  On or about and between January

7    24th, 2016 and October 12th, 2016, both dates being

8    approximate and inclusive, within the Eastern District of

9    New York and elsewhere, I, Blaise Caroleo, also known as

10   Nimfeater, did knowingly and intentionally persuade and induce

11   a minor for the purpose of producing one or more visual

12   depictions of such conduct knowingly and having the reason to

13   know such visual depictions would be transported an

14   transmitted using a means of facility of interstate and

15   foreign commerce.  And those depictions that were produced

16   were sexual in nature.

17         THE COURT:  Ms. Argo, any further input?

18         MS. ARGO:  Just to be clear, Your Honor, that this

19   all occurred within Staten Island and elsewhere?

20         THE COURT:  He mentioned the Eastern District, but

21   did it occur in Staten Island?

22         THE DEFENDANT:  Yes.

23         MS. ARGO:  And --

24         THE COURT:  And elsewhere?

25         THE DEFENDANT:  Okay, okay, yes.

Proceedings                    54

1          THE COURT:  You remember Staten Island for sure?

2          THE DEFENDANT:  I remember Staten Island for sure,

3    yes.

4          MS. ARGO:  And just that the means of transporting

5    via interstate commerce was, in fact, the Internet, the use of

6    the Internet?

7          THE DEFENDANT:  Yes, that was via the use of the

8    Internet.

9          MS. ARGO:  Finally, just that this pertains

10   specifically, obviously, to Jane Doe Number 1 in this count,

11   and that she, in fact, was under 18 years of age?

12         THE DEFENDANT:  That is correct, she was a minor.

13         MS. ARGO:  That's all, Your Honor.  We believe

14   that's sufficient.

15         THE COURT:  I think so as well.

16         All right, Mr. Caroleo, I do accept your plea to

17   Count Four of the Superseding Indictment.  I find that you

18   understand the charge against you.  You understand the

19   consequence of pleading guilty to that charge.

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  You understand your rights.  You

22   understand the rights that you are waiving by pleading guilty.

23   And you pled guilty not only knowingly, but voluntarily, and

24   you have provided to me in your allocution a factual narrative

25   under oath that shows that you, indeed, are guilty to the

Proceedings                                              55

1   charge in Count Four.  So I accept your plea of guilty to

2   Count Four.

3              Now, as I indicated to you, the work of the

4   Probation Department begins following this plea.

5              And, Ms. Setlzer, I assume whenever it is that

6   Probation reaches out to Mr. Caroleo, you wish to be notified

7   and to be present?

8              MS. SELTZER:  Yes, I wish to be present or if for

9   some reason I'm available -- unavailable, then

10  Ms. Sullivan-Bennis will be available.

11             THE COURT:  We will have them notify you, and you

12  and Ms. Sullivan-Bennis can make a choice of who appears with

13  Probation.

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.

16             Now, the reality is I do not set a sentencing date

17  at this time.  Normally, it takes 12 to 14 weeks to finish the

18  pre-sentence report, but as I appointed Ms. Argo earlier to

19  help me with my eyes, Ms. Setlzer, I am going to appoint you

20  as the marshal of the time.  And to the extent that things

21  drag on, please feel free to reach out to Mr. Villanueva who

22  will intercede to move things along if that may be.

23             Do you understand?

24             MS. SELTZER:  (No response.)

25             THE COURT:  Correct, ma'am?

Proceedings                                          56

1          MS. SELTZER:  Yes.

2          THE COURT:  Okay.

3          That being the case, is there anything else we need

4    to attend to before we adjourn?

5          MS. SELTZER:  Only, I don't know if Your Honor keeps

6    Court Exhibit 1 or if you give it back --

7          THE COURT:  No, I return it to the Government.

8          MS. SELTZER:  Then I would just ask that a copy be

9    made an sent to me.

10         MS. ARGO:  Yes we will do that, Your Honor.

11         THE COURT:  Yes.

12         Now, I would think procedurally since we did not

13   bring the jury up, it is probably easier for the jury

14   commissioner to discharge them from downstairs.

15         MS. SELTZER:  I leave it to Your Honor's discretion.

16         THE COURT:  No one feels compelled to have them come

17   in?

18         MS. SELTZER:  No.

19         MS. ARGO:  No, Your Honor.  They have not been

20   sworn.

21         THE COURT:  They have not been sworn, so they have

22   not seen me either.  They might be looking for the nice lady

23   who was here yesterday.

24         MS. SELTZER:  She was quick.  She was very quick.

25         THE COURT:  We appreciate all of your efforts,

Proceedings                                    57

1    including Judge Scanlon's, but William will have them

2    discharged with everyone's thanks downstairs.  Maybe I will

3    even go with him.

4           And we thank you.  And if there is nothing further,

5    then we will adjourn.

6           MS. SELTZER:  Thank you, Judge.

7           MS. ARGO:  Thank you, Your Honor.

8           MS. WASHINGTON:  Thank you, Judge.

9

10          (Matter adjourned.)

11

12

13                    *     *     *     *     *

14

15   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
16

17    /s/ Stacy A. Mace                November 13, 2019

18    _____     _____
        STACY A. MACE                   DATE

19

20

21

22

23

24

25

SAM     OCR     RMR     CRR     RPR