**MARION A. SELTZER**
**Attorney at Law**
**1725 York Avenue -Suite 16B**
**New York, New York 10128**

**Telephone:** **(212) 289-8798**                **E-mail: MarionSeltzer23@gmail.com**
                **(917) 922-8640**


May 10, 2021


Honorable Eric N. Vitaliano
United States District Court - EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

BY ECF
                Re: USA v Blaise Caroleo, 17 CR 177 (ENV)


Dear Judge Vitaliano

        This sentencing memorandum is submitted on behalf of Blaise Caroleo. I urge the court to

consider a non-Guidelines sentence of fifteen years imprisonment.  Such a sentence is appropriate

in this case because of (1) the underlying facts concerning the defendant's criminal behavior; 2) his

age and background, and  (3) the factors listed in 18 U.S.C. § 3553(a).  A  Guideline sentence

would be unreasonable and would not satisfy the statutory purposes of punishment.  A Guideline

sentence would constitute cruel and unusual punishment in violation of the Eighth Amendment.


        **BACKGROUND**

        On November 13, 2019, Blaise Carole plead guilty to Count Four of the superceding

indictment against him.  That count charged a violation of 18 .U.S.C. § 2251 (a) and 18 U.S.C.

1

§2251(e) in that he used a computer or mobile internet device to persuade a minor to engage in sexually explicit conduct.  This case involves what is colloquially referred to as sexting.

The facts revealed in discovery proceedings  show a series of online chats between Mr. Caroleo and females less than 18 years of age through online media in which he requested and they sent him pornographic photos of themselves.

The term sexting refers to the creation and sharing of personal sexual images or text messages via mobile phones or internet applications.  Although adults and teens alike often engage in sexting, it is images which minors create of themselves and transmit either to their peers or to someone over the age of 18 that are characterized as criminal behavior.  Sexting is different from what is typically understood as child pornography or sexual exploitation of a minor because it involves what is commonly known as taking a "selfie."

In 2013 the word "selfie" was named the Oxford Dictionaries Word of the Year. For the uninitiated, a selfie is a self-portrait photo typically taken with a digital/smartphone camera. The explosion of social media and camera phones have created endless opportunities for anyone to share their self-portraits with the world. Some teens, already prone to over-sharing, take multiple selfies daily.[1]  This activity has also provided a means for people with inappropriate sexual proclivities to  satisfy their needs without actually meeting the victims or in fact without leaving their own homes.

The defendant Blaise Caroleo never met any of the girls with whom he was sexting nor was he was aware of their addresses or real names.  He had no means of communicating with the girls

---

[1]https://criminal.findlaw.com/criminal-charges/child-pornography-and-selfies--what-you-need-to-know.html

2

other than through an online chat room on Kik.com.   18 USC § 2251 (a) and 2251(e) are defined

as Sexual Exploitation of a Child. Violation of the statute  carries a *mandatory minimum* sentence

of 15 years in jail.


## EIGHTH AMENDMENT ISSUES

The sentencing parameters in this indictment and under the statute to which Mr. Caroleo

plead guilty is a violation of the Eighth Amendment's prohibition against cruel and unusual

punishment.

The Supreme Court first interpreted the Eighth Amendment to prohibit "greatly

disproportioned'" sentences in Weems v. United States, 217 U.S. 349, 371, 30 S.Ct. 544, 54 L.Ed.

793 (1910) (quoting O'Neil v. Vermont, 144 U.S. 323, 340, 12 S.Ct. 693, 36 L.Ed. 450 (1892)

(Field, J., dissenting)). Since then, the Court has emphasized that constitutional proportionality is a

"narrow" principle in that it "does not require strict proportionality," and it "forbids only extreme

sentences that are `grossly disproportionate' to the crime." Harmelin v. Michigan, 501 U.S. at 997,

1001, 111 S.Ct. 2680 (Kennedy, J., concurring) (quoting Solem v. Helm, 463 U.S. 277, 288, 103

S.Ct. 3001, 77 L.Ed.2d 637 (1983)); accord Graham v. Florida, 130 S.Ct. at 2021.

A number of principles relate to this narrow view of the constitutional mandate of

proportionality: (1) the "substantial deference" generally owed by reviewing courts "to the broad

authority that legislatures necessarily possess in determining the types and limits of punishments for

crimes"; (2) a recognition that the Eighth Amendment does not mandate "any one penological

theory" and that "competing theories of mandatory and discretionary sentencing have been in

varying degrees of ascendancy or decline since the beginning of the Republic"; (3) respect for the

3

"marked divergences both in underlying theories of sentencing and in the length of prescribed prison terms" that "are the inevitable, often beneficial, result of the federal structure"; and (4) prudential understanding that proportionality review "should be informed by objective factors to the maximum possible extent," that the "most prominent objective factor is the type of punishment imposed," and that while the Supreme Court has frequently referenced "the objective line between capital punishment and imprisonment for a term of years," it has itself acknowledged a "lack [of] clear objective standards to distinguish between sentences for different terms of years." Harmelin v. Michigan, 501 U.S. at 998-1001, 111 S.Ct. 2680 (Kennedy, J., concurring) (internal quotation marks omitted).

The Supreme Court's proportionality cases fall into two classifications. "The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case." Graham v. Florida, 130 S.Ct. at 2021 (emphasis added). In making a case-particular assessment of proportionality, the Court has employed a two-step analysis, first "comparing the gravity of the offense and the severity of the sentence." Id. at 2022. The Court observed that it will be "`the rare case in which this threshold comparison... leads to an inference of gross disproportionality.'" Id. (quoting Harmelin v. Michigan, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring) (first alteration in Graham omitted)). Should such an inference arise, however, the second step of the analysis requires a court to "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." Id. Only "[i]f this comparative analysis `validate[s] an initial judgment that [the] sentence is grossly disproportionate'" will the sentence be deemed "cruel and unusual." Id. (quoting Harmelin v. Michigan, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J., concurring), U.S v

4

Reingold, 731 F.3d 204 (2d Cir. 2013).

The mandatory minimum sentence provided for in 18 U.S.C. §§2251 (a) and (e) is 15 years.  The maximum sentence is 30 years.  The sentence guidelines calculation in this case is Level 48, higher than the limits of the U.S.S.G. sentencing chart, (PSI  ¶ 101).  This number in itself is the same or greater than guidelines for terrorists, mass murderers, drug king- pins, etc. and is an example of how out of touch the sentencing framework in this case is with reality.

Considering that Mr. Caroleo is 57 years old and has been in custody since May 2017, any sentence by the court in excess of 15 years would be a life sentence.  In fact even with a 15-year sentence Mr. Caroleo will probably die in jail.  In 2032 will 68 years old.  He is not in good health and suffers from high blood pressure, high cholesterol, hypo thyroid, sleep apnea and diverticulitis, (PSI ¶124). Under normal circumstances he would have a life expectancy of about 80 years. However, due to his health and the conditions in jail - including the lack of exercise, the limited medical care, the Covid 19 epidemic, a family history of cancer (his mother died at age 62) and the failure of the penal system to provide colonoscopies, (PSI ¶111) his life expectancy is limited.

Recent research suggests that each year an inmate spends in jail reduces that inmate's life expectancy by 2 years. The number of years served has a direct correlation to years of life lost, https://www.prisonpolicy.org/blog/2017/06/26/life_expectancy.  Even if this calculation is double what might occur here, one can anticipate that whatever sentence this court imposes will be a life sentence.  If one applies the 2-year calculation suggested in the prison policy.org article, it is reasonable to conclude that a 15-year sentence would predict Caroleo's death within the next few

years.  Mr. Caroleo has expressed to me on several occasions, that he expects to die in jail. [2]

**OFFENSE LEVEL COMPUTATION**

The  PSI concluded that the appropriate Offense Level is Level 48.  However, since that level is greater than what exists on the U.S.S.G. charts it was  reduced it to Level 43.

**CRIMINAL HISTORY COMPUTATION**

The PSI  concludes that Mr. Caroleo has 2 Criminal History Points.

---

[2] These calculations do not take into consideration the hardship that inmates at the MDC have suffered in the last few years.  First, because of an MDC fire after which heat and hot water was impacted for a considerable period of time, also because of the inadequate air conditioning system where the temperature at the jail rose to 100 degrees, because of the failure to provide adequate heat in the cold weather, and the unsanitary conditions that resulted from the conditions of the lavatories, all of which have resulted in a class action suit against the MDC. More recently because of the Covid-19 epidemic the inmates are subject to lock-down, limited social interaction and the possible effects of Covid-19, https://gothamist.com/news/fire-at-notorious-brooklyn-federal-jail-as-nyc-enters-heat-wave, https://www.fox5ny.com/news/fire-didnt-cause-heating-problem-at-mdc-brooklyn-says-inspector-general, https://www.nytimes.com/2019/02/01/nyregion/mdc-brooklyn-jail-heat.html, https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html?action=click&module=Spotlight&pgtype=Homepage.

## SENTENCING FACTORS - 18 U.S.C. 3553(a)

(a)     Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1)the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)the need for the sentence imposed—

(A)to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)to afford adequate deterrence to criminal conduct;

(C)to protect the public from further crimes of the defendant; and

(D)to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)the kinds of sentences available;

(4)the kinds of sentence and the sentencing range established for—

(A)the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ........

(5)any pertinent policy statement—...issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code,

(6)the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)the need to provide restitution to any victims of the offense.

         The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases. The base offense level for distribution of child pornography, which in 1991 was 13, has been gradually increased to 22 as the Commission has attempted to square the Guidelines with Congress's various directives. See United States Sentencing Commission, The History of the Child Pornography Guidelines, supra, at 19. On top of that, many of the § 2G2.2 enhancements apply in nearly all cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a

7

two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting
sadistic or masochistic conduct or other forms of violence (qualifying for a
four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or
more images (qualifying for a five-level enhancement pursuant to §
2G2.2(b)(7)(D)). See United States Sentencing Commission, Use of Guidelines and
Specific Offense Characteristics for Fiscal Year 2009, available at
http://www.ussc.gov/gl_freq/09_glinexgline.pdf (last visited April 19, 2010). In
sum, these enhancements, which apply to the vast majority of defendants sentenced
under § 2G2.2, add up to levels, resulting in a typical total offense level of 35,
United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010).

This result is fundamentally incompatible with § 3553(a). By concentrating
all offenders at or near the statutory maximum, § 2G2.2 eviscerates the fundamental
statutory requirement in § 3553(a) that district courts consider "the nature and
circumstances of the offense and the history and characteristics of the defendant"
and violates the principle, reinforced in Gall, that courts must guard against
unwarranted similarities among sentences for defendants who have been found
guilty of dissimilar conduct. See Gall, 552 U.S. at 55 (affirming a sentence where
"it is perfectly clear that the District Judge considered the need to avoid
unwarranted disparities, but also considered the need to avoid unwarranted
similarities among other co-conspirators who were not similarly situated" (emphasis
in original)), Dorvee at 187.

District judges are encouraged to take seriously the broad discretion they
possess in fashioning sentences under § 2G2.2 -- ones that can range from
non-custodial sentences to the statutory maximum -- bearing in mind that they are
dealing with an eccentric Guideline of highly unusual provenance which, unless
carefully applied, can easily generate unreasonable results, Dorvee at 188.

This Court has the discretion to sentence Mr. Caroleo to fifteen years. The United States

Sentencing Commission Guidelines serve as "the starting point and the initial benchmark" for all

sentencing proceedings. Gall v. United States, 552 U.S. 38, 46, 49 (2007). However, following the

Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Guidelines are

only advisory. In determining a sentence, a Court must not only consider the Guidelines

calculations, but also equally take into account all other statutory concerns listed in 18 U.S.C. §

3553 (a)(2) as well as the defendant's unique circumstances. See 18 U.S.C. § 3553 (a). A district

court should not presume a Guidelines sentence will always satisfy § 3553(a), because the

8

Guidelines are only "a rough approximation of sentences that might achieve § 3553(a)'s objectives." Rita v. United States, 551 U.S. 338, 351, (2007); Booker, 543 U.S. at 245. A court is free to reject a Guidelines sentence when "the Guidelines sentence itself fails properly to reflect §3553(a) considerations." Rita, 551 U.S. at 350–51. A sentencing judge also "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 552 U.S. 85, 101 (2007). Here, as discussed, both of these concerns apply: the Guidelines range fails to properly reflect the §3553(a) factors and policy issues compel a shorter sentence than suggested by the Guidelines.

   3553 (a) 1. Refers to the "Nature and Circumstances of the Offense and Characteristics of the case." Here, the convictions involves online chats between the defendant and females less than 18 years of age through online media.

        A review of the voluminous emails between Caroleo and the girls with whom he was sexting, provided to counsel in discovery proceedings, reveal that although the activities of Mr. Caroleo were certainly  illegal, the girls with whom he was sexting knew he was *not* a peer and understood that he was an adult. It is conceded that he lied about his exact age.  There is no evidence of coercion in the emails.  In that regard,  the victim impact paragraph of the pre-sentence report indicates that the government has been in contact with all the girls and to date, although requested,  no responses have been received in regard to requested affidavits of loss. Likewise, there have been no victim impact statements from any of the nine girls that might lead to the conclusion that extreme harm befell any of them from their sexting activities with Mr. Caroleo (PSI ¶23).

        The lack of significant victim negative impact should be considered by the court.  The

Court is well-aware of the sometimes not-so-lengthy sentences imposed  for crimes of drug distribution, weapons possession, assault, robbery theft, murder etc.,  and while it is difficult for someone who is not a teenager and who has not grown up in the age of selfies and smart phones to totally understand, it may very well be that the impact on the girls who sexted with Mr. Caroleo may be that of extreme embarrassment and even shame.  Yet, whether the impact rises to the level of substantial harm such as that caused by a murder, assault,  rape,  theft or the lingering impact of drugs, should lead to the conclusion that 15 years imprisonment is sufficient punishment in relation to whatever harm was inflicted upon the girls with whom Mr. Caroleo sexted.

There is no allegation that anyone else was involved with the activity to which Mr. Caroleo plead guilty. He did not transfer  the images he received to any third party. Finally, Mr. Caroleo has no criminal history of sexual deviant activity .

The conduct charged in the indictment is understandably a criminal offense. The government in this and in similar cases has indicted  a Twenty-First Century activity relying on a Twentieth Century statute. Sections 2251 and 2252 were written in February 1978, 92 Stat. 7 and amended in May 1984, 1986, 1998, 2006 and lastly on October 8, 2008, 122 Stat.4242.  No amendment of the statute makes any reference to the activity known as sexting.

(3553 (a) 2)    requires that the court consider the need for the sentence imposed—

      (A)to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)to afford adequate deterrence to criminal conduct;

      (C)to protect the public from further crimes of the defendant.

      Mr. Caroleo is 56 years old.  If he is sentenced to the mandatory minimum sentence

of 15 years, the public will not be harmed upon his release.  He has no history of deviant sexual

behavior.  He will be categorized as a sex offender and thereby will be closely supervised for the

remainder of his life.  His behavior in jail has been without reproach. (PSI ¶¶ 24),.

It would be expected that Mr. Caroleo's adjustment to supervised release at age 70 will be

consistent with his behavior in jail.   This is a far cry from the defendant in the Robinson case

discussed below.  It is Mr. Robinson who received the only sentence which is disproportionate to

sentences imposed in cases similar to this one.

In Robinson, (a case cited in the courts 9/26/19 memo) the 24 year old defendant received

the maximum sentence. As stated in the N.D.N.Y government sentencing memo, they considered

that upon release Mr. Robinson would be a continuing risk to society.  The federal prosecutors

wrote that

> the Court (should) examine the conduct the defendant... engaged in while in
> custody... That conduct d[id} not depict a scared young man being bullied, but
> rather depicted a defiant man who refuses to comply with the requests of those
> charged with housing him and maintaining order. His conduct included tampering
> with his cell locks, cursing out corrections officers, failing to comply with directions
> from officers, threatening to throw urine on officers, vandalizing
>  other  inmates' cells, and threatening to shoot a corrections officer between
>     the eyes and bomb his house when he gets out of
>     custody.(Robinson Docket sheet #40, p. 8) .

§3553(a) (6) requires the court to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct;

In the 2017 case of USA v Anthony Weiner *U.S.A. v. Anthony Weiner*, 17 CR 307 (DC)

(SDNY), Weiner's illegal conduct stemmed from communications that the former congressman

had with a 15-year old girl on social media sites between January and March 2016.  Weiner had no

physical connection or involvement with the 15-year old.  His illegal conduct only involved the

11

transmittal of sexually explicit photographs.

Indeed in *Weiner* the conduct was more egregious than in the case before this court. Prosecutors alleged that Weiner coaxed the girl, who he knew was 15, to get naked and fondle herself, which he watched over Skype and Snapchat .The AUSA stated at sentencing that during two Skype sessions, and in a Snapchat communication, Weiner used graphic and obscene language to ask the minor victim to display her naked body and touch herself, which she did while he watched.  At the sentencing, the AUSA asked for a sentence of between 21 to 27 months behind bars, noting that on "three occasions in 2016, he asked the 15-year-old to get naked and asked her to perform."  https://people.com/crime/anthony-weiner-sentenced-sexting-teen-girl.

When Judge Cote in the SDNY sentenced Weiner to 21 months in prison she stated that "Weiner's sentence carried more importance because of his previous political career.. And this is a crime that deserves serious punishment," www.cnn.com/2017/09/25/politics/anthony-weiner-sentencing/index.html.

On May 19, 2017, Weiner pled guilty to one count of transferring obscene material to a minor, pursuant to 18 USC §1470.  Despite the media uproar, and the fact that Judge Cote's and presumably the DOJ and the U.S. Attorney's Office  found Weiner's conduct reprehensible, the government saw fit to prosecute him with a section of The United States Code that carried a sentencing range of 0 to 10 years.

**B**. In the 2017 case of United States v Austin Jones, 17 CR 417 (N.D. Ill.), cited in this court's memorandum dated September 26, 2019 (docket entry #77, p. 2), Mr. Jones, age 26,  a YouTube personality pleaded guilty in another sexting case to one count of receipt of child pornography.  The plea agreement in that case called for sentencing guidelines of 235-293 months,

https://www.justice.gov/usao-ndil/press-release/file/1127286/download   After prosecutors sought

an 11-year sentence, the court sentenced Mr. Jones to 10 years imprisonment.

.https://www.jacksonville.com/zz/news/20190503/singer-austin-jones-gets-10-year-prison-sentenc

e-for-child-porn.2020.

In United States v Seeger, The defendant Alexander Seeger was sentenced to 96 months

18 CR 250 (2020, N.D.N.Y.).  The facts described in the government's pre-sentencing

memorandum reveal that

> the then twenty-eight-year-old defendant admitted to being a repeat predator who
> masqueraded as a sixteen year-old boy to sexually exploit "younger teen[age]" girls. As set
> forth in the Revised Pre-sentence Report, the defendant's phone contained several nude
> images of a fourteen to fifteen year-old minor female with whom the defendant admitted
> trading images for two months.  He admitted that he communicated with approximately ten
> to twenty minors females for the purpose of having them send nude images of themselves.
> He admitted to using these images for sexual purposes and masturbating to them,    (
> Seeger docket sheet #42).

On October 11, 2019,  30 year-old Jacob Tunison in a similar case was sentenced to 188

months imprisonment, United States v Tunison, 19 CR 89 (W.D.N.Y.).  Tunison who lived in

Olean, New York, used Facebook to communicate with a minor female who was less than 13 years

old. The defendant sent numerous lewd images of himself to the minor and solicited the minor to

produce and send various images of herself to him.

Https://www.justice.gov/usao-wdny/pr/olean-man-pleads-guilty-receipt-child-pornography.

In 2018 in the case of  United States v Robinson 18 CR 404 (N.D.N.Y) (also cited in the

court's Memorandum and Order),  the facts suggest defendants actions were far beyond anything

that occurred in Mr. Caroleo's case. The court sentenced Mr. Robinson to the maximum term  of

imprisonment of 30 years.  The AUSA in the N.D.N.Y. stated in support of such a sentence in his

13

sentencing letter to the court:

> That exploitation revolved around the defendant actively targeting young boys who he met online while they were playing video games on a PlayStation video game system. The defendant then convinced his victims to give him personal information so that he could interact with them directly over other internet, and electronic and video platforms including Skype, Zoom, Play Station and cellular telephones. Once he was able to isolate his victims the defendant resorted to various forms of manipulation, bribery, bullying and threats to coerce and induce his victims to send him sexually explicit images and videos. These acts include:
> The defendant telling Victim 1 that he loved him and was dying of stage IVcancer and getting mad at Victim 1 when he did not comply with his requests.
> The defendant yelling at, threatening to kill and threatening to hack Victim 2's  Play Station Account.  The defendant offering Victim 2 a gift card if he sent him a pornographic image of himself..

> The defendant telling Victim 4 he knew where he lived (Canada) and threatening to hurt Victim 4's family if he did not comply with his requests to expose himself .

> Thus, in his efforts to procure these images from his victims, Mr. Robinson a then 24 year old defendant, resorted to manipulation, bribery, extortion and when all else failed threats of violence against these children, ( Robinson Docket sheet # 40, p. 7-8),
> https://www.poughkeepsiejournal.com/story/news/local/2019/05/13/new-paltz-man-exploited-children-faces-30-years-prison/1188814001/  ).

If the court considers the kinds of sentence and the sentencing range established in these similar cases and applies the proportionality review standards that the Supreme Court has expressed, then a sentence not greater than the mandatory minimum 15-years is appropriate.

## CONCLUSION

For all these reasons and to insure that the sentence imposed be sufficient but not greater than the time necessary to promote the goals of justice and the sentencing guidelines, and to afford

adequate deterrence and protect the public from any future improper conduct from this defendant,
under the facts of this case a sentence of 15 years would be appropriate.


Respectfully submitted,


*Marion Seltzer*


Copies: AUSAs Erin Argo and Alicia Washington by email and ECF

15