

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CMM:EEA
F. #2016R01958

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 15, 2021

<u>By ECF and Interoffice Mail</u>

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   <u>United States v. Blaise Caroleo</u>
             <u>Criminal Docket No. 17-177 (ENV)</u>

Dear Judge Vitaliano:

      The government respectfully submits letter in advance of the defendant Blaise Caroleo's sentencing, scheduled for October 29, 2021, and in response to the defendant's sentencing submission (ECF No. 107, "Def.'s Memo"). For the reasons set forth below, the government respectfully submits that a sentence within the United States Sentencing Guidelines range ("U.S.S.G." or "Guidelines") is appropriate in this case and would be sufficient, but not greater than necessary, to achieve the legitimate purpose of sentencing.

BACKGROUND

      On November 12, 2019, after a jury was impaneled and immediately prior to the commencement of trial in this case, the defendant pleaded guilty to Count Four of a nine-count Superseding Indictment. Count Four charged that on or about and between January 24, 2016 and October 12, 2016, the defendant engaged in the sexual exploitation of a child, namely, Jane Doe #1, in violation of 18 U.S.C. § 2251(a).

A.   <u>Offense Conduct</u>

      On February 24, 2016, the New York Police Department ("NYPD") arrested the defendant for assaulting a bus driver in Manhattan. <u>See</u> Presentence Investigation Report ("PSR") ¶ 5. At the time of his arrest, the defendant possessed a Motorola X51565 Droid MAXX2 cellular telephone (the "Phone"). The NYPD seized the phone upon the defendant's arrest. <u>Id.</u> The Manhattan District Attorney's Office ("DA's Office") obtained the defendant's written consent to search the Phone on or about August 15, 2016. Analysts at the DA's Office discovered what appeared to be multiple images of child pornography on the Phone. The DA's Office provided the Phone to the Federal Bureau of Investigation

("FBI"). The FBI searched the Phone pursuant to a warrant, issued by Magistrate Judge Viktor V. Pohorelsky on September 9, 2016. PSR ¶ 6.

That search revealed substantial evidence that the defendant coerced and enticed at least three minor victims to engage in sexually explicit conduct, and that he possessed numerous images and videos of child pornography. PSR ¶ 7. The Phone contained an application ("app") called Kik, which is a social media-type app that allows users to send messages, pictures and videos to other users of the app. The username on the Phone's Kik app was "Nimfeater." PSR ¶ 8. The activity on the app under the username Nimfeater revealed that minor females had been solicited for pictures and videos of their genitalia. Id.

The FBI's investigation confirmed that the "Nimfeater" Kik account was subscribed to the defendant. PSR ¶ 9. A review of the Phone revealed numerous messages through the Kik app between the defendant and Jane Doe #2, whose username on Kik was "blue_zavala55" and was 14 years old at the time. The defendant directed Jane Doe #2 to send pictures of her vagina and clitoris, and Jane Doe #2 complied. She told the defendant that she was 15 years old and sent him a picture of her face. PSR ¶ 10.

Kik messages on the Phone also revealed that the defendant exchanged messages with Jane Doe #3, who was 12 years old at the time. Jane Doe #3's Kik username was "heyhotboysunder14." The defendant asked Jane Doe #3 to send a picture "in just ur undies or less" and after she sent him a picture of her vagina, the defendant told her to "show ur tits n face I wanna jerk off looking at u," and also asked her "Can u vid u fingering yourself." PSR ¶ 11.

In addition to the Kik chats and pictures with minors described above, the defendant had numerous images and videos of child pornography stored on the Phone, including images and videos of children approximately 7 to 9 years old, engaging in sex acts with adults. PSR ¶ 12. The defendant also sent nude pictures of himself to the minors. PSR ¶ 8.

On October 12, 2016, the FBI executed a search warrant at the defendant's residence on Staten Island. PSR ¶ 13. The FBI seized one Verizon Ellipsis tablet and two additional phones (an HTC D100LVW and a Motorola XT1080 Droid) from the defendant (collectively, the "Devices"), who acknowledged that the Devices were his. In an interview with agents, Caroleo also acknowledged that the Kik username "Nimfeater" was his and that he had chatted with minors on the app and requested sexually explicit photos of them. PSR ¶¶ 13, 17. During the search of the defendant's residence, the agents also discovered, among other things, a safe with three firearms inside, one of which, a Smith & Wesson .38 caliber revolver, bore Caroleo's fingerprints. PSR ¶¶ 13, 22.

The Devices seized from the defendant's residence contained a large number of additional Kik chats in which the defendant and Kik users, who were minors between the ages of 12 and 15, exchanged sexually explicit images and videos. PSR ¶ 14. On the Devices and the Phone, the FBI identified at least nine minor victims. PSR ¶ 16. In the chats, Caroleo tells one victim "I could go to jail for this," due to her age, and then tells the

same victim "So be and do wat pleases me kitten I'm a Dom, I prefer my baby girl just surrender herself to her daddy.… I know u enjoy to surrender ur will to b taken. N I want to visit u wen ur ready n rape u." Id. The Devices further revealed chats between the defendant and Jane Doe #1 on the Kik app beginning in 2015, when she was approximately 14 years old. PSR ¶ 14. The FBI interviewed Jane Doe #1's parents and received a copy of her birth certificate to verify her age. In his chats with Jane Doe #1, the defendant, who was approximately 51 at the time, represented to her that he was a teenager. Id. The defendant described sex acts he wanted to perform on Jane Doe #1 and persuaded her to send him pictures of her vagina. Id. The defendant also distributed sexually explicit images of Jane Doe #1 and another victim, Jane Doe #5, to others. Id.

One of the Devices also revealed Kik chats on or about January 17, 2017, between the defendant and an adult male who referred to himself as "Walt," in which the defendant asked Walt for "younger daddy daughter incest" and for "young girls getting dick." PSR ¶ 15. Walt sent the defendant a video of child pornography, depicting a 12-year-old child touching her vagina. Id. The defendant sent Walt child pornography images of a 6-year-old girl being penetrated by hand and an 11-year-old girl being penetrated by a penis. Id.

B.  Guidelines Calculation

The government agrees with the calculation of the Guidelines range contained in the PSR and submits that a sentence within the Guidelines range is appropriate here. Though the Guidelines calculation differs from the government's Guidelines calculations in the plea agreement, the effective Guidelines range is the same, namely, 30 years' imprisonment. The defendant pled guilty to Count Four, sexual exploitation of a child, namely, Jane Doe #1, which carries a mandatory minimum sentence of 15 years and a maximum sentence of 30 years. See 18 U.S.C. § 2251(a).

1.  The Guidelines Calculation in the PSR

In the PSR, Probation calculated the base offense level to be 32, based on U.S.S.G. § 2G2.1, which governs offenses under 18 U.S.C. § 2251(a). PSR ¶ 29. The offense level is then increased by two levels pursuant to § 2G2.1(b)(1)(B), because Jane Doe #1 was over the age of 12 but not yet 16 at the time of the offense. Id. at ¶ 30. The offense involved the commission of a sexual act by Jane Doe #1, and therefore a two-level enhancement applies pursuant to § 2G2.1(b)(2)(A). Id. at ¶ 31. The defendant also engaged in knowingly distributing sexually explicit images of Jane Doe #1, therefore increasing the offense level by two levels pursuant to § 2G2.1(b)(3). The offense involved the use of a computer to entice and coerce Jane Doe #1 to engage in sexually explicit conduct, which increases the offense level by another two levels pursuant to § 2G2.1(b)(6)(B). This calculation results in a subtotal adjusted offense level of 40. Because the defendant engaged in the sexual exploitation of nine known minor victims, Probation calculated the offense levels as they relate to each minor victim and assigned units pursuant to §3D1.4(a), (b) and (c) as follows:

3

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 4(a) – JD#1 | 40 | 1.0 |
| Count 4(b) – JD#2 | 36 | 1.0 |
| Count 4(c) – JD#3 | 36 | 1.0 |
| Count 4(d) – JD#4 | 36 | 1.0 |
| Count 4(e) – JD#5 | 38 | 1.0 |
| Count 4(f) – JD#6 | 36 | 1.0 |
| Count 4(g) – JD#7 | 36 | 1.0 |
| Count 4(h) – JD#8 | 36 | 1.0 |
| Count 4(i) – JD#9 | 36 | 1.0 |

The multiple count adjustment results in a total of nine units. PSR ¶ 95. Taking the greater of the offense levels above, which is 40, the offense level is increased pursuant to the table at U.S.S.G. § 3D1.4 by 5 units, yielding a combined adjusted offense level of 45. PSR ¶ 98. Because of the defendant's pattern of coercing and enticing minors to engage in sexually explicit conduct, the "Repeat and Dangerous Sex Offender Against Minors" enhancement applies pursuant to § 4B1.5(b)(1), which increases the offense level by 5 levels. PSR ¶¶ 20, 99. Because the defendant pleaded guilty, he accepted responsibility and under § 3E1.1(a), a two-level decrease in the offense level is warranted. PSR ¶ 100. According to Probation's calculations, the total offense level is 48. PSR ¶ 101. However, in those rare instances when a total adjusted offense level is calculated to be over 43, the offense level will be treated as 43. PSR ¶ 101; U.S.S.G. Ch. 5, Pt. A, comment n.2.

Probation calculated that defendant falls within Criminal History Category ("CHC") II. PSR ¶ 106. With a CHC of II and a total adjusted offense level of 43, the defendant's Guidelines range is life in prison. PSR ¶ 151. However, the statutorily authorized maximum sentence on Count Four is 30 years, and therefore the effective Guidelines range is 30 years. PSR ¶ 151; U.S.S.G. § 5G1.1(c)(1).

2. <u>The Guidelines Calculation in the Plea Agreement</u>

The government calculated the defendant's Guidelines as follows:

| | |
|---|---|
| Base Offense Level (§ 2G2.1(a)) | 32 |
| Plus: Victim Between Age Twelve and Sixteen (§ 2G2.1(b)(1)(B)) | +2 |
| Plus: Engaged in Distribution (§ 2G2.1(b)(3)) | +2 |

4

| | |
|---|---:|
| Plus: Use of a Computer (§ 2G2.1(b)(6)(B)) | +2 |
| Plus: Multiple Victims (§ 3D1.2(d); § 3D1.4)) | +5 |
| Minus: Acceptance of Responsibility (§ 3E1.1(a)) | -2 |
| Total Adjusted Offense Level | <u>41</u> |

The government further calculated that the defendant falls within CHC II, which resulted in a Guidelines sentencing range of 360 months to life imprisonment. However, by operation of the statutory maximum penalty for Count Four, the effective Guidelines range of imprisonment is 360 months, or 30 years. The defendant stipulated to this Guidelines calculation in the plea agreement.

## DISCUSSION

A. <u>Applicable Law</u>

The United States Sentencing Guidelines still provide strong guidance to the Court following <u>United States v. Booker</u>, 543 U.S. 220 (2005), and <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005). Although <u>Booker</u> held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. <u>Booker</u>, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007).

Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." <u>Id.</u> at 49-50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) requires that the sentence imposed reflect:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and . . .

5

      (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See 18 U.S.C. § 3553(a).

B.    Analysis of the Section 3553(a) Factors Calls for a Guidelines Sentence

All of the statutorily enumerated purposes of sentencing demand a Guidelines sentence for this defendant. A Guidelines sentence of 360 months reflects the seriousness of the offense and the need to protect the public, particularly vulnerable children, from further crimes by the defendant.

    1.    The Nature and Circumstances of the Offense

The nature and circumstances of the offense are sickening and heartbreaking. Over the internet, the defendant was able to prey on vulnerable young girls, some as young as 12, and manipulate them into producing child pornography for him. The defendant was fully aware of how old these girls were – in many cases, he asked them their ages and they told him truthfully how old they were. The defendant, meanwhile, tried to pretend he was closer to their age, a teenager, rather than a man in his 50s. The defendant exploited these girls for his own prurient and demented desires. The defendant's exploitation and manipulation are particularly evident with Jane Doe #1, whom he messaged for months, telling her repeatedly that he loved her. The defendant coaxed 14-year-old Jane Doe #1 into sending him sexually explicit pictures of herself, claiming he cared about her – and then he distributed these images of her to strangers on the internet, demonstrating the defendant's utter lack of shame and unremorseful dissemination of child pornography.

In addition to exploiting the young girls he messaged on Kik, the defendant also distributed and received images of "commercial" child pornography, which are images of sexual abuse victims identified by the FBI that have been widely disseminated. The videos and images the defendant shared and received are, in fact, not just child pornography – they are videos and images of rape and child abuse. Each time those images are shared, the children in them are victimized all over again.

    2.    The Seriousness of the Offense and the Need for Just Punishment

In his sentencing memorandum, the defendant tries to minimize and normalize his conduct by calling it "sexting" and taking "selfies," as though asking minor girls for sexually explicit pictures of themselves was commonplace and unremarkable. The defendant's attempt to shoehorn his abhorrent conduct into common vernacular does not alter what occurred in this case: the defendant enticed and coerced underage girls to produce child pornography for him. He was a middle-aged man pretending to be a teenager to lonely, emotionally damaged young girls. He specifically sought out young girls and wanted sexually explicit images of them. The defendant's description of sexting implies that the exchange of sexually explicit images or messages was a consensual act; however, the defendant conveniently omits that these victims were too young to consent, and the defendant did his best to conceal who he really was and how old he was. The defendant often told these girls he loved them; he told them they were beautiful and special. But if they

6

did not send him the images he wanted, or if they stopped sending sexually explicit images, he would threaten to reveal the previously produced images to the girls' friends or strangers. The defendant fails to realize, even to this day, that his conduct was extremely harmful and psychologically damaging to the victims. Just punishment is a Guidelines sentence of 360 months.

### 3. The Need for Deterrence and to Protect the Public

The defendant's conduct presents a danger to the public, which is emphasized by the defendant's attempt to minimize his conduct. He argues that because the underage victims did not submit affidavits of loss to the government, that somehow his conduct was not detrimental to them. This could not be further from the truth. In preparation for trial, the government met with Jane Does #1, #2 and #3 on multiple occasions. All of them expressed repeatedly how incredibly embarrassed and ashamed they were of the images the defendant had them send. They experienced extreme sadness and anxiety each time they had to discuss the messages or review the images. Understandably, now that over five years has passed since the defendant's arrest, and even more time since the messages were sent, the victims are trying to move on with their lives as adults and want to put the defendant's conduct behind them as best they can. In addition, with the Court's permission, the case agent is prepared to provide testimony at sentencing of the emotional trauma the defendant's conduct caused the victims in this case.

The defendant argues that because the defendant has "no history of deviant sexual behavior," he presents no risk of danger to the public. Def.'s Memo at 9. On the contrary, as long as the defendant has access to a computer or other electronic device that has internet capability, he presents a risk to the public. The defendant's messages on Kik demonstrate that he was on the app at all hours of the day and night, accessing it on his phone while he was at work as well as on his devices at home. He used the app for over a year and reached out relentlessly to any girl who appeared to be young and vulnerable. Whether he is 60, 70 or 80, the defendant could still use a computer and could again prey on young girls through social media apps such as Kik, or seek to download commercial child pornography and exchange it with others, as the defendant already did in this case.[1] A Guidelines sentence is appropriate to protect the public and deter the defendant from engaging in this conduct again.

C. The Defendant's Eighth Amendment Argument Is Meritless

The defendant argues that a Guidelines sentence would violate his Eighth Amendment rights, because the defendant used a computer to commit the crime of sexual exploitation rather than committing it in person, which was not contemplated by the statute of conviction, 18 U.S.C. § 2251(a). He further argues that, though he stipulated to the

---

[1] The defendant states that he "did not transfer the images he received to any third party," though this is clearly not the case. Def.'s Memo at 10. He did, in fact, transfer images of Jane Doe #1, Jane Doe #5 and other child pornography images to third parties. See PSR ¶¶ 14, 15.

7

Guidelines calculation in the plea agreement which estimated an adjusted offense level of 41 and a Criminal History Category of II, which yields a Guidelines sentence of 360 months to life, that a 15-year mandatory minimum sentence is sufficient here.  First, congressional intent does not factor into Eighth Amendment jurisprudence.  Second, previous Eighth Amendment challenges to sentences imposed under the federal child pornography statutes have been repeatedly rejected.  Accordingly, the Court should reject these meritless arguments.

    1.        Applicable Law

The Eighth Amendment of the Constitution prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The Supreme Court has observed that the amendment "guarantees individuals the right not to be subjected to excessive sanctions."  Roper v. Simmons, 543 U.S. 551, 560 (2005).  "The right flows from the basic precept of justice that punishment for crime should be graduated and proportioned to the offense."  Id.  Even when reviewing especially lengthy sentences, courts are cautious when applying the Eighth Amendment to noncapital sentences, which are subject to a "narrow proportionality principle" that forbids only those sentences which are "grossly disproportionate" to the crime.  Ewing v. California, 538 U.S. 11, 20-23 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-97 (1991)).   In applying the proportionality principle, courts "must first consider whether the 'gravity of the offense and the severity of the sentence' give rise to an 'inference of gross disproportionality.'"  See United States v. Reingold, 731 F.3d 204, 216 (2d Cir. 2013) (quoting Graham v. Florida, 560 U.S. 48, 60) (concluding that the five-year sentence mandated by 18 U.S.C. § 2252(b)(1) provided no inference of gross disproportionality).

    2.        Congressional Intent Is Not Part of Eighth Amendment Jurisprudence

The defendant fails to point to any case, in the Second Circuit or elsewhere, where a court has ruled that the application of a criminal statute beyond the specific intention of its Congressional drafters makes out a claim under the Eighth Amendment as cruel and unusual punishment.  Through the "thicket of . . . Eighth Amendment jurisprudence, one governing legal principle emerges . . . [a] gross disproportionality principle."  Lockyer v. Andrade, 538 U.S. 63, 72 (2003).  Thus, proportionality challenges are the exclusive claims recognized under the Eighth Amendment.

In any event, as a matter of statutory interpretation, the plain meaning of the text of 18 U.S.C. § 2251 demonstrates its applicability to the defendant's conduct.  Moreover, the legislative history of the statute demonstrates that Congress intended to criminalize a wide variety of means of sexually exploiting children, including electronic means.  Though the statute was adopted in 1978, Congress expanded subsection (c)(2) in 1988 to be inclusive of "any means including by computer," and it later expanded the scope of subsection (a) to be inclusive of transmission "by any means, including by computer."  See Child Protection and Obscenity Enforcement Act of 1988, H.R. 5210, 100th Cong. (1988); Child Pornography Prevention Act of 1996, H.R. 3610, 104th Cong. (1996).  In a recent amendment, congressional findings noted that "[c]hild pornography is readily available through virtually every Internet technology, including Web sites, email, instant

8

messaging, Internet Relay Chat, newsgroups, bulletin boards, and peer-to-peer." See Effective Child Pornography Prosecution Act of 2007, H.R. 4120, 110th Cong. (2008). Congress found that the mere "existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." See Child Pornography Prevention Act of 1996, H.R. 3610, 104th Cong. (1996) (emphasis added).

Imposing a Guidelines sentence on a defendant who received, possessed, distributed, and employed, used, persuaded, induced, enticed and coerced a minor to engage in sexually explicit conduct, as the defendant is charged with doing, plainly serves the congressional purpose of eliminating the existence of and trafficking in child pornography.

### 3. The Defendant's Disproportionality Argument Fails

The defendant claims that his Eighth Amendment rights would be violated by a Guidelines sentence because "any sentence by the court in excess of 15 years would be a life sentence," and cites the defendant's minor ailments and conditions at MDC. Def.'s Memo at 5. To support his assertion, the defendant repeatedly seeks to minimize the severity of his crime by dismissing it as "sexting." The defendant also cites United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010), for the proposition that the Guidelines calculations are disproportionate to the crime committed here.

However, the Second Circuit has repeatedly rejected all Eighth Amendment/reasonableness challenges to sentences imposed under the federal child pornography statutes, including 18 U.S.C. § 2251(a). See, e.g., United States v. Muzio, 933 F.3d 61 (2d Cir. 2020) (finding a 420-month sentence for two counts of sexual exploitation of a child, distribution and possession of child pornography reasonable); United States v. Kopp, 712 Fed. App'x 117, 119 (2d Cir. 2018) (rejecting an Eighth Amendment challenge of a 235-year sentence for sexual exploitation of a child, conspiracy to sexually exploit a child, distribution of child pornography, and possession of child pornography); United States v. Rivera, 546 F.3d 245, 254-55 (2d Cir. 2008) (rejecting, in a case involving the exchange of explicit images and videos by chat, an Eighth Amendment challenge of a life sentence for sexual exploitation of a child and possession of child pornography).

The facts and circumstances of this case do not counsel a different result. Notably, the defendant's conduct closely resembles the conduct of the defendant in Muzio. In Muzio, a post-plea appeal, the defendant, in his thirties, posed as a teenage boy on the internet, and sought sexually explicit images from girls, some of whom were as young as 11 and 13 years of age. Muzio, 933 F.3d at 63. In imposing the sentence, the district court explained that the victims were "real" people who were "never going to be able to forget what they did," and whose pictures and videos "will live on forever . . . on the internet," and that "[c]hildren are supposed to be able to lead their lives without being subjected to this kind of evil." Id. at 64. The Second Circuit agreed, affirming the 420-month sentence. Id. at 67. In doing so, it considered the appellant's argument that under Dorvee, 616 F.3d 174, and United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017), it should find that the sentence imposed was too harsh. But the Second Circuit pointed out that neither Dorvee nor Jenkins involved the exploitation of a child – the production – of child pornography, which

9

inherently made the defendant in <u>Muzio</u> a greater danger to the public and involved a much more serious crime.  <u>Id.</u> at 65.  In addition, the court considered the dissent's view that the defendant did not engage in any actual physical contact with the victims, and stated,

> [S]ome offenses that do not involve physical contact may nonetheless inflict very real and even more severe harm on victims. We thus decline to hold, as a matter of law, that non-contact production of child pornography is categorically less harmful than sexual abuse involving physical contact.

<u>Id.</u> at 65-66.  Therefore, the Court should reject the defendant's request for a below-Guidelines sentence.

## CONCLUSION

A Guidelines sentence of 360 months is sufficient, but not greater than necessary, to achieve the legitimate purpose of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:      /s/ Erin E. Argo
Erin E. Argo
Assistant U.S. Attorney
(631) 715-7846

Enclosure
cc: Marion Seltzer, Esq.